[No. 6428.]

## BREENE v. BREENE.

1.  BILL OF EXCEPTIONS—*When Necessary*—When, in *habeas corpus* proceedings, the record contains no bill of exceptions, the court of review will assume that the evidence sustains the findings of the court below—(344).

2.  HABEAS CORPUS—*Jurisdiction*—The writ operates upon the person of the respondent found within the jurisdiction, and he may be compelled to produce a child which is in his custody, though without the jurisdiction—(345).

And the child being brought before the court, the court may dispose of it according to what may appear to be for the interest of the child—(345, 356).

3.  CUSTODY OF CHILDREN—*Right of parents*—The rule of the common law which gave to the father a right to the custody of the child superior to that of the mother, has been greatly relaxed. The paternal right is subordinated to the welfare of the child, and this, whether the father is or is not a suitable person to have its custody—(346).

The father and mother, residents of Colorado, were separated. A child of three years had been in the custody of the mother since their separation. The father in the absence of the mother secured possession of it and carried it to New York, where he left it in custody of a distant relative. In view of the fact that this entirely separated the child from both of the parents, and left it to be nurtured during its tenderest years among strangers, that the mother was financially of better ability than was the father, to provide for it, and that the conduct of the father, in the manner of securing the custody of the infant, and disposing of it among strangers, gave occasion to question his solicitude for the welfare of the child, and that the disposition made by the father would entirely remove the child from the maternal affections and care, the court committed it to the mother—(346, 348).

4.  ——*Parent's Right of Visitation*—In the same case, no application being made in the court below for permission to the father to visit the child, the court refused to reverse the final order for this omission. The court said that the affirmation of the order would not preclude the court below from making the proper order allowing such visits, or other order, from time to time, touching the custody of the child, as changing conditions might require or justify—(348).

*Error to Denver District Court*—HON. CARLTON
M. BLISS, Judge.

Messrs. DIXON & DIXON for plaintiff in error.
Mr. A. M. STEVENSON for defendant in error.

Mr. JUSTICE HILL delivered the opinion of the
court:

This is one of that unfortunate class of cases in-
volving the right to the custody of an infant child as
between the father and the mother.  The proceeding
was in *habeas corpus*.  It appears from the record,
that the plaintiff in error, Peter W. Breene and Ber-
nice Breene, upon whose relation this action was
brought, are husband and wife, both residents of
Denver; that they had one child William Breene, born
about November 20th, 1904; that after the birth of
said child they continued to live together until about
November, 1906, at which time they separated; that
in 1907 negotiations were opened between their re-
spective attorneys with a view to a settlement of their
property rights; that at this time the child was in the
exclusive possession of its mother, and had been since
their separation; that on or about the 13th of Octo-
ber, 1907, when the child was in charge of its nurse,
the father, without the consent of, and in some man-
ner unknown to the mother, secured possession of it,
immediately taking it to the City of New York, where
he placed it in the custody of one of his distant rela-
tives, intending to have it retained there.  The writ
of *habeas corpus* was not prayed for or issued until
after the child had been removed from Colorado, but
was issued immediately thereafter.  Upon answer
made, the respondent was ordered to have the child
returned.  The trial judge stated in his findings of
fact that he did not regard the father as a person un-
fit to have the custody of the child, but was of the
opinion that the best interest of the child, at its then

age, required that its custody be placed with the petitioner, its mother, which was so ordered. The cause is brought here by the respondent for review upon error.

The plaintiff in error has not seen fit to bring up the evidence for our consideration, for which reason we must .assume that it sustains the findings of the trial court, that the mother was a fit person to have the custody of the child during its tender years, and that it was for the best interest of the child, that its custody be placed with her.

The validity of the judgment is assailed upon five principal grounds. First, that as there was no action pending at the time the child was removed by its father to the state of New York, the court was without jurisdiction upon *habeas corpus* to order the father to return it to Colorado. Second, that under the common law the father was entitled to the custody of the children, and that as the common law has not been abrogated by any statute of this state it is controlling in a case of this kind. Third, that even if General Section 2912 of the Revised Statutes of 1908 could be held applicable, it does not apply to a case where the father and mother are living separate and apart; also in case this section is held applicable that construction of it would make it unconstitutional, for the reason that its title is not broad enough to include this portion of the act which differs materially from the substance of the former act amended. Fourth, that the judgment is contrary to the findings of the court, for the reason, that it having found the husband was not an unsuitable person to be awarded the custody of the child, it should have been so awarded to him. Fifth, that the judgment is erroneous in that it deprives the respondent of the right of visitation, and makes no provision for such visits or communication with the child by him under any regulations or at all.

Counsel have cited no authorities to support their first contention, but base their argument solely upon the language of our statute; from its language we conclude that it was never intended it should be given such a narrow construction as contended for. The record discloses, that both the petitioner and respondent were residents of the City of Denver and within the jurisdiction of the trial court; that the wrongful act complained of was performed within said city. Numerous cases hold that the writ operates upon the person within the jurisdiction and he can be compelled to produce a child from without the jurisdiction.

In Church on Habeas Corpus, at page 170, it is said:

"The writ of *habeas corpus* is sometimes resorted to as a foundation for reaching persons restrained of their liberty beyond the jurisdiction of the court to which application is made, but which restraint has been caused by a person acting within the jurisdiction of the court; * * * This question comes up most frequently in cases concerning the custody of infant children; and where a person is shown to have once had the custody of a child, and he has parted with it to some one else wrongfully, that is, without legal authority, so that it is true that he cannot redeliver the child at the time when its production is required, the child being then out of his possession, custody, and control, the fact that he has so parted with the possession of the child is no answer to proceedings to compel its production on *habeas corpus*, except where there is clear proof of an absolute impossibility to produce the child."

In the case at bar the writ operated upon the person within the state; the return admitted that the child was in the custody of respondent and within his power to produce within twenty days; respondent did produce the child in obedience to the writ, and thereby

placed the child in the custody of the court. Under this state of facts, we conclude that the court was within its jurisdiction in the issuance of the writ in the first instance and in the disposition of the child thereafter. This position seems to be supported by all the authorities cited upon the subject.—*The Queen v. Barnardo*, 23 Q. B. D. 305; *The Queen v. Barnardo*, 24 Q. B. D. 283; *In the Matter of Jackson*, 15 Mich. 416; *Rivers v. Mitchell*, 57 Iowa 193.

We find it unnecessary to determine the constitutionality of General Section 2912, Rev. Stat. 1908, for the reason that the great weight of authority in the United States is to the effect that the old rigid rule of the common law contended for by counsel, which gave to the father, by reason of the paternal relation, under all circumstances, except in very extreme cases, a right to the custody and services of his child, superior to that of the mother and of all others, in modern times, has been greatly modified and relaxed both in England and America. It is now almost universally conceded in both countries that this paternal right must yield and be subordinated to the interest and welfare of the child under the control of the state. In this jurisdiction the paramount and controlling question by which the court must be guided is the interest and welfare of the child.—*McKercher et al. v. Green*, 13 Colo. App. 270; *Wilson et al. v. Mitchell*, 48 Colo. 454.

This power exists whether given by the section above referred to or not. The decree herein affecting the custody of the child was made by the trial court in the exercise of a discretionary power, and, as the plaintiff in error has not seen fit to bring up for our consideration the evidence upon which this discretion was based, we are not in a position to review it with a view of saying whether there was an abuse of such discretion. We understand the above is the rule, regardless of the fact that the father, as in this case, is held to be

not an unsuitable person to be awarded the custody of
the child.   Many other matters may, and probably did,
enter into this question.   Neither of the parties has
an absolute right that can militate against the welfare
of the infant.

From the record before us, we can gather several
sound reasons which might have been partially con-
trolling in the mind of the trial court in exercising its
discretion.   First, the age of the child (under three
years) ; second, that the mother was a competent per-
son to have it; third, that the father, while a compe-
tent person to have its custody, by his own pleadings
showed that he was not possessed of sufficient means
to provide and care for it as its mother was; fourth,
the acts of the father in the manner he secured its pos-
session from the mother, and in removing it to the City
of New York and there placing it in the hands of
strangers to the child, and his returning to Denver.
These matters might have caused the court to believe
that the father did not appreciate its happiness and
welfare in the future, to the extent of the mother, and
that, as this was intended to be his disposition of the
little one, it would thereby be removed from the af-
fections, love and care of the mother or any one else
who was near and dear to it, to be thus reared among
strangers without having those feelings of love, affec-
tion and tenderness lavished upon it, which are so
necessary and vital to a child of infant years, not only
for its happiness during that period, but in the mold-
ing and making of its character for the years to come.
This meant the rearing of the child in the City of New
York, when its father and mother were both residents
of the City of Denver, and, so far as we are advised,
intended to so remain.   This would prevent the mother
from having reasonable opportunity to visit her little
one, and meant that it was to be reared among stran-
gers two thousand miles from both father and mother,

during that period of life when the prattle of the little tongue sounds sweeter to the ears of the parent than the strains of any music of human composition yet presented. This natural right of association between parent and child was to be denied both mother and father during that period of the child's life when its very presence has a tendency to soften the hearts of the parents to all mankind, and works as a material aid in keeping the parents younger in their environments and more tender in their nature. Yet, according to the father's admitted plans, all this was to be denied both him and the mother without any reasonable reason therefor. These matters and many others may have been controlling in the mind of the trial court in the exercising of its discretion, regardless of the fitness of the father otherwise to be awarded the custody of the child.

The complaint that the judgment is erroneous in that it deprives the respondent of the right of visitation and makes no provision for such visits, is not properly presented by the record, for the reason that the final decree is not embodied in the record and we are not advised what it contains.

In addition, by an examination of the original record, we find that the attorneys for the petitioner requested that the court make provisions, if the respondent so desired, for his visiting the child at reasonable times. The court was in doubt of its right so to do in a *habeas corpus* action, when the court so stated counsel for the respondent replied, "I want that to appear in the record—that the court has refused to permit the father to see the child." To which the court responded, "Did you apply for such an order?" Counsel stated, "I did not ask for it." The court replied, "Then let the record show that Judge Dixon refuses to ask for an order permitting the father to see the child." The court further stated to counsel for re-

spondent, "if you wish to ask for permission for the respondent to visit this child at any reasonable time, the court will so order now, if you wish to ask the court to do it." To which counsel replied, "It is impossible, if your Honor please, for me to ask it, because Mr. Breene has left. It is now ten o'clock at night and I cannot see him; it is impossible for me to speak for him in the premises." Counsel for the petitioner states in his brief that an order allowing the respondent to visit the child at reasonable times has been made by the trial court since the rendition of the judgment; it is not a part of this record, and we have no official evidence of that fact, but under the record as here disclosed, we do not think that this cause should be reversed for the reason that no such condition is placed in the order providing for a judgment for final decree. The respondent's counsel were advised that they could have it therein if they so desired and cared to make a request that it be so included. We are also of the opinion that these matters do not preclude the respondent from having the right to visit his child at reasonable times, and under such regulations as might be provided for by the court, and that in case such an order has not been made and this right is refused him, the affirmance of this judgment would not preclude the trial court, upon proper application, from entering such an order, as in its discretion the facts would warrant; as likewise, it would not preclude the court in this case or in some other proper case from making further orders pertaining to the custody of a child when conditions may have changed which would warrant and justify the making of any change concerning its custody.

For the reasons stated, the judgment is affirmed.

*Affirmed.*

Mr. JUSTICE GABBERT and Mr. JUSTICE MUSSER concur.