[No. 8163.]

THE PEOPLE EX REL. ALICE PAULINE BROXHOLM, v. PARKS ET AL.

1. INFANT.—*Custody.* In proceedings affecting the custody of an infant the paramount and controlling consideration is the welfare of the child. (462)

2. ——*Right of Parent.* The right of the parent to the custody of the child is not an absolute right, and will never be enforced where opposed to the interest and welfare of the child. (463)

The mother of a child sued to obtain its custody. It appeared that her purpose was to deliver the child to a third person. This fact was held to eliminate from consideration the claim of the mother, and that the case was governed by the general rule. (462)

*Error to Mesa District Court.*—Hon. CHAS. CAVENDER, Judge.

Mr. CLAY B. WHITFORD, and Mr. HENRY E. MAY, for plaintiff in error.

Messrs. FRY & WELSH, for defendant in error.

The subject matter of controversy is the custody of a little girl, Winifred, now about seven years of age. The mother instituted habeas corpus proceedings below against Mr. and Mrs. Parks to secure the custody of the child, and from a judgment adverse to her, has brought the case here for review on error.

Winifred was born out of lawful wedlock May 7, 1907, in London, England. The mother not being able to care for her gave her to a Mrs. Pearse when she was eight months old. This arrangement was effected through a solicitor representing the mother, and was evidenced by an indenture, by the terms of which Mrs. Pearse adopted the child, and agreed to maintain, educate, and clothe the infant in all respects as if the infant were her natural child, and the mother covenanted that she would not at any time thereafter, in any way, directly or indirectly, seek or claim to recover possession or control of her child, and would not interfere with the adopting party's sole and absolute guardianship and control of the infant. The husband of Mrs. Pearse was a wealthy man and had a fine home in the vicinity of London. Mrs. Pearse took the babe to Paris, and returned to England a few weeks later. She was in ill health, and traveled extensively, taking the baby and a nurse with her. For a time in 1908 they were in Colorado. In February, 1909, Mrs. Pearse returned to England with the child. Mrs. Parks, then Rose McCary, the sister of Mrs. Pearse, and who lived at Grand Junction, visited Mrs. Pearse in England in August of that year. In November following they returned to Grand Junction with the child, and took up their residence in a house belonging to Miss McCary, where Mrs. Pearse died January 1st, 1911. During this period Mrs. Pearse was very ill most of the time, and Miss McCary

had entire charge of the child. There is some conflict in the testimony on that subject, but the trial court found as we have stated, and we adopt that finding.

Miss McCary was married to Mr. Parks in October, 1910. Mrs. Pearse left a will in which she expressed a desire that Mrs. Wadsworth, another sister, also residing at Grand Junction, should have the care and custody of the child, but as she was not able to assume this responsibility the child remained with Mrs. Parks. Mr. and Mrs. Parks stand well, having excellent reputations in every respect. Mr. Parks is a substantial citizen, in comfortable circumstances financially. Winifred is well cared for by the respondents, and it is their intention to give her such education and advantages as will render her happy, and as they would bestow upon the little girl if she were their own. They have no children, and have reached that age when it is not probable they will have any. Mr. Parks is in the cattle business, resides on his ranch in the summer, where he has a comfortable house well furnished, and lives in Grand Junction during the winter months. There is not a word of testimony that respondents are not fit persons to have the custody of the little girl. On the contrary the testimony establishes that they are. Several other members of Mrs. Parks' family reside in Grand Junction or that vicinity and are excellent people.

Shortly after the death of Mrs. Pearse, Mr. Pearse wanted to take the little girl back to England, and demanded her custody. The respondents refused to give her up, and later endeavored to have the mother give her to them, which she refused. Mr. Pearse returned to England, called on Mrs. Broxholm, informed her of the situation and secured from her a document by which she intrusted the custody of the child to Mr. Pearse on terms similar to those in the document given Mrs. Pearse. Mr. Pearse returned to Grand Junction and instituted proceedings in the District Court of Mesa County to obtain the custody of the child, which were not successful.

Some time before the death of Mrs. Pearse, the mother married Mr. Broxholm, a London solicitor, who has a comfortable home and is prosperous. Two children were born of this marriage. There is nothing in the record before us to indicate that either Mr. or Mrs. Broxholm are not fit persons to have the custody of Winifred. After the action instituted by Mr. Pearse was decided against him, Mrs. Broxholm instituted the proceedings we are reviewing. She and her husband testified to the effect that if the custody of Winifred was given Mrs. Broxholm, she would be taken home for a while and then put in school.

The trial judge found as a fact that if the custody of the child was given Mrs. Broxholm, it was her intention to turn her over to Mr. Pearse. We think the testimony supports this finding. The evidence does not establish that Mr. Pearse is unfit in any way to have the custody of the child. On the contrary it appears that he is an excellent man in every respect, but the trial court determined that the best interests of Winifred demanded that she be left with the respondents and discharged the writ. Both parties appear to concede that the contracts with Mr. and Mrs. Pearse are without validity under the law of England and this country, and do not preclude the relator from claiming the custody of her infant.

Mr. Justice Gabbert delivered the opinion of the court:

On behalf of relator it is contended that motherhood makes a *prima facie* case for her and entitles her to the custody and control of her child, unless it clearly appears she is not a fit person to be given such custody and control.

Relator executed two contracts by which she purported to surrender all care, custody and control of the child to strangers. These contracts may not be strictly binding upon her, but they are proper to consider in determining her intention with respect to the child, as they evince a purpose not to exercise the rights of mother-

hood. The trial court found as a fact from testimony sufficient to sustain it, that the purpose of relator if she secured control of Winifred, was to turn her over to Mr. Pearse. This fact eliminates the question of the fitness of relator to have the custody of her infant, and the decision of the case must therefore turn entirely upon the application of the rule that in proceedings affecting the custody of an infant the paramount and controlling question by which the court must be guided is the interests and welfare of the child, or as tersely stated by some authorities, "The welfare of the infant is the polar star by which the discretion of the court is to be guided." *Wilson v. Mitchell,* 48 Colo. 454, 111 Pac. 21, 30 L. R. A. (N. S.) 507; *Breene v. Breene,* 51 Colo. 342, 117 Pac. 1000; *McKercher v. Green,* 13 Colo. App. 270, 58 Pac. 406; *Andrino v. Yates,* 12 Idaho, 618, 87 Pac. 787.

Mr. Pearse is a worthy man, but to give him the custody and control of Winifred, although it is the desire of her mother, means that the child will be intrusted to the care of strangers who would simply be employed for that purpose, while if permitted to remain with respondents she will be cared for and nurtured by persons prompted to discharge these duties by affection for her. They have the means to give her a good education and have evinced the intention to do so. They have excellent reputations in every respect, are eminently proper persons to be intrusted with her custody, and it appears that if left with them, she will be given the same advantages as though she were their own child. In short in their custody and control she will be well cared for and educated, and have that affection bestowed which is necessary to the welfare of a child. True her environments will be different from what they would be should she be taken to England, but this does not establish that her welfare would be better subserved by such a change. In the circumstances of this case we think her interests require that she remain in the custody and control of her foster parents.

It is contended on behalf of relator that as respon-

dents are entirely without right to claim the custody of the child by any action on the part of either Mrs. Pearse or the mother that they should not be permitted to resist the action. The right of a parent to the custody and control of a child is not an absolute and uncontrollable right, like a right in property, and will never be enforced when it is apparent that its enforcement is against the best interests and happiness of the child. *Chapsky v. Wood,* 26 Ks. 650.

The judgment of the District Court is affirmed.

*Judgment affirmed.*

Chief Justice Musser and Mr. Justice Hill concur.