## No. 9017.

### SCHWARTZ *v.* KING ET AL.

1. WATER RIGHTS—*Conditional Decree—Delay in Performing Condition.* By a general adjudication decree certain appropriators were awarded priority to a certain volume of water, absolutely, and to an additional volume, upon condition that with reasonable diligence they should bring under irrigation the residue of the land, the irrigation of which was proposed. After the expiration of ten years, their successors in title, having complied with this condition, applied for an order making absolute the conditional features of the decree. They were opposed by the defendant, a later appropriator, who contended that by reason of the long delay of plaintiffs, and their predecessors in title, they should, in any enlargement of the decree be subordinated to him. But defendant had never made any use of the water until the petitioners or their grantors had begun to bring the additional lands under cultivation. *Held* that, as to the defendant, there had been no abandonment of the right granted by the original decree.

2. —— *Application of Water Awarded Conditionally—Reasonable Diligence.* What constitutes diligence varies with circumstances and the lands not under irrigation at the date of the original decree, and being practically deserted, while in the

hands of trustees and assignees, during the years of delay, the court applied the doctrine of Weldon Company v. Farmers' Company and Conley v. Dyer 43 Colo. 22, and refused to disturb the finding of the court below in favor of petitioners.

*Error to Garfield District Court, Hon. John T. Shumate, Judge.*

Mr. C. W. DARROW, for plaintiff in error.

Mr. A. L. BEARDSLEY, for defendants in error.

Mr. Justice Bailey delivered the opinion of the court.

This is a review of a judgment on petition of C. A. King and others to have made absolute the conditional parts of a decree rendered in a water adjudication on May 5, 1888. The decree is a part of a general one adjudicating water rights in Water District No. 45. Protest was filed by Sheridan N. Schwartz in the court below, and upon trial the issues were found for the petitioners, with decree and judgment accordingly. The protestant brings the cause here for review on error. In this opinion he will be designated as defendant, and petitioners as plaintiffs.

Plaintiffs are the owners of the Talmadge and Gibson Ditch, taking water from East Divide Creek, in Water District No. 45. Their proprieties are numbered 36, dating from August 14, 1885, and calling for 372 cubic feet of water per minute of time; No. 49, on account of the first enlargement of said ditch, dating from April 10, 1886, calling for 315 cubic feet of water per minute of time; and No. 82, dating from July 9, 1887, calling for 100 cubic feet of water per minute of time being water for approximately 656 acres of land, under the general decree of May 5, 1888.

This general decree was absolute as to only 118 acres, and the balance contingent upon the bringing of the remainder of the land under irrigation with reasonable diligence. Plaintiffs set up that they had, with reasonable diligence, increased the irrigable lands under their ditch

to 450 acres, and prayed that this additional amount of water be made absolute, with 300 cubic feet of water per minute of time to priority No. 36, from August 14, 1885, and 240 cubic feet per minute of time to priority No. 49, as of date April 10, 1886.

Defendant is the owner of the Johnson Ditch No. 70A, and of priority No. 114A, calling for 72 cubic feet of water per minute absolutely, and six cubic feet conditionally, dated April 14, 1893, the decree for which was entered December 3, 1907, without notice to plaintiffs or others interested. He claims in substance that neither the plaintiffs nor their grantors have brought additional lands under cultivation with reasonable diligence, so far as his priority, No. 114A, is concerned; that by reason of the long delay, any relief granted them should be subject to his priority; since he has been making beneficial use of all the water adjudicated to him, long prior to the use by plaintiffs of any water for additional land. Upon hearing of testimony the conditional parts of the decree of May 5, 1888, were made absolute, according to the prayer of the petition, subject to prior appropriations, but not subject to that of defendant.

The only question to be determined is whether plaintiffs were reasonably diligent in making beneficial use of their conditional allotments of water. It appears that in 1888 and 1889 the lands for which the water was decreed were incumbered by trust deeds by their owners, for the benefit of an investment company, which later failed and made an assignment; and that the land passed to various trustees, assignees and successors in trust, who were non-residents, and who never were on the land. For the period of approximately ten years no new lands were brought under irrigation by any one. It then passed to others, who made beneficial use of the water upon increased acreage, until, at the time of the filing of the petition, water had been put to beneficial use upon approximately 450 acres.

Whether the lapse of practically ten years, during which time no use was made of the conditional allotments of water, may be considered as such an abandonment as to permit defendant to acquire the water for his use, need not be here considered, for the reason that his use of the water did not begin until after plaintiffs or their grantors had begun to bring additional lands under cultivation. So far as defendant be concerned, there was no abandonment of any of the rights secured under the decree of May 5, 1888. The doctrine announced in *Beaver Brook Co. v. St. Vrain Co.*, 6 Colo. Ap. 130, at page 135, 40 Pac. 1066, 1068, is applicable to the facts of this case, which is there thus stated:

"That the interval from 1882 to 1893 was presumptively too long must be conceded, were the reasons and circumstances unexplained * * * but how can that enure to the benefit of appellants? If, by neglect to apply the water within a proper time, the right to apply was forfeited, the water reverted, any one could proceed to appropriate and apply it; but such right could only attach while the right of the former claimant was in abeyance by reason of his negligence, and the second party must have availed himself of the right before the re-entry and prosecution of the enterprise by the first party. Unless, during the interim, when by failure to prosecute the enterprise the water rights may be regarded as having reverted, some party intervenes and makes a valid and legal appropriation of the water, the first party may resume, and if such resumption occurs before intervening rights attach, the right to appropriate is lost."

It is claimed on the part of defendant that plaintiffs did not begin to apply the water until after he had commenced to use it. This question being disputed, the conclusion reached by the trial court against the defendant will not be disturbed, there being ample evidence to support it.

As to whether, after the land was again put into cultivation, plaintiffs or their grantors used reasonable diligence in

applying the conditional allotments of water, it may be said that what constitutes reasonable diligence varies in each particular case, with the attendant facts and circumstances. Here, because the land was practically deserted while in the hands of the assignees and trustees, the doctrine announced in *Weldon Co. v. Farmers Co.*, 51 Colo. 345, 119 Pac. 1056, should be applied. In that opinion it is said at page 459:

"It is impracticable, if not impossible, for a settler to seed and irregate 160 acres of sod breaking a year. Settlers on the public domain are usually poor men, and cannot do all this at once, even if it were possible. It is a continuing process, requiring a number of years * * * The test is not necessarily the number of acres irrigated each year. If these tracts were farmed, and all the water necessary was beneficially used with reasonable diligence in the improvement of the land, it is sufficient."

And also to the same effect from *Conley v. Dyer*, 43 Colo. 22, at page 29, 95 Pac. 307:

"What constitutes due diligence and what is a reasonable time depend, of course, upon many circumstances; and one adjudication cannot be taken as a test by which to determine these matters in another trial, for the reason that the circumstances are never precisely the same in both."

The question of due diligence, as well as questions upon other material and essential facts, were sharply in dispute. All were resolved in favor of the petitioners. We find nothing in the record which warrants a reversal of the findings of the court upon the facts involved. The judgment should therefore be affirmed, and it is so ordered.

Judgment affirmed.

Mr. Chief Justice Hill and Mr. Justice Allen concur.