STATE EX REL. ERNEST PRICE v. DOROTHY PRICE.[1]

January 16, 1942.

No. 33,054.

Ottocar Sobotka, for appellant (respondent below).
Dodge & Dodge, for respondent (relator below).

HOLT, JUSTICE.

Habeas corpus instituted by respondent in the district court of Pine county against appellant, his wife, for the custody of their child Nancy, born March 17, 1939, appellant, without cause, having departed from respondent's home June 2, 1941, taking the child with her. The court, after a hearing, awarded the care and custody of the child to respondent, the father. The mother appealed to this court from the decree. The trial here being de novo, the Honorable E. J. Kenny, a judge of the district court of the eleventh judicial district, was appointed referee to take and report the testimony of the parties. This has been done, and the matter submitted for decision upon briefs filed.

[1]Reported in 2 N. W. (2d) 39.

From the evidence reported, it appears that on January 8, 1937, respondent, Ernest Price, married appellant, Dorothy Price. He then owned a home at Willow River, this state, in which they lived up to April 18, 1941. At the time the evidence herein was taken, in September 1941, respondent was 24 years old and appellant was 20.

The evidence also reveals that respondent for about nine years prior to April 1, 1941, had been steadily employed by one J. R. Stanton, in the operation of a hardware and furniture store and a lumberyard at Willow River. Soon after the marriage of the parties, appellant acquired the habit of attending evening parties and dances, sometimes not returning until the next morning. This notwithstanding, respondent did not complain or find fault until after Nancy was born. Then, if she had not returned at the time his work began, he was compelled to carry Nancy to a neighbor, or get a sister or brother of his to come over and care for Nancy until appellant's return. This naturally produced some friction. But no open rupture between them occurred. In October 1940, however, appellant left her home and child and went to a sister in Hinckley, who operated a tavern, and there remained until November 11 (the time of the big snow storm). She thereafter stayed for a week or ten days, and again departed from home and child, and did not come back until after Christmas. In January she again left. This time she went to St. Paul and South St. Paul and obtained work. In March, respondent went to St. Paul and induced appellant to return with him. They agreed that she then promised to remain with respondent and care for Nancy if he would leave Willow River and obtain a position at better wages elsewhere. Respondent thereupon quit his employment at Willow River and on April 8 obtained the management of the Lampert Lumber Company's yard at Shell Lake, Wisconsin, about 65 miles from Willow River, at the wage of $100 a month. Appellant was there with respondent when a modern apartment in a four-plex was rented and was satisfied with arrangements. On April 18 they moved in. Respondent owned a car. On two or three occa-

sions she left Shell Lake in the car, leaving Nancy in someone else's charge. But on June 2, against respondent's wishes, she, while he was at work, took the car and Nancy and left for good. When the testimony was taken by the referee, she was living with a married sister, who, with her husband, is running a restaurant at Staples, this state. The sister and her husband own the modern five-room bungalow in which they live. It has three bedrooms, one of which appellant and Nancy occupy. The sister has four children of her own, the oldest seven years of age. Appellant receives eight dollars a week and room and board for herself and Nancy for doing the housework and caring for the children while her sister and her husband attend the restaurant.

Appellant testified that her mother died some six months previous to her marriage; that her father, who was a drunkard, wished her to marry so he could dispose of what household property remained, for drink; that she had no love or affection for respondent when she married and had none now. She and her sister claim that respondent stated that he was not the father of Nancy. Respondent vigorously denies that he ever said anything to that effect. His entire conduct with respect to the care and attention paid to Nancy when appellant deserted and neglected her conclusively refutes the assertions of appellant and her sister. There is also the testimony of Mrs. J. R. Stanton, of Willow River, with whom Nancy sometimes was left when appellant failed to return before respondent had to begin his day's work; and of the wife of the principal of the public school at Willow River; and of the wife of the principal of the school at Shell Lake, who lived in one of the apartments in the same four-plex as respondent; and also that of Mrs. Solt, the owner of the four-plex, who lived in one of the apartments, all having, at times, when appellant was away from home, cared for Nancy, that respondent had given Nancy good care and kept her well and clean. With this outline of the testimony we have reached the conclusion, and so find, that respondent is more fit and capable to have the custody and the care of the education of Nancy than is appellant.

568

The statute, Mason St. 1927, § 8933, provides that the father and the mother of children "are equally entitled to their custody and the care of their education." But when there is a contest between parents and the courts are required to determine the matter of a child's custody, whether in a divorce or a separation case, or a *habeas corpus* proceeding, the best interests of the child is the paramount consideration. Jacobs v. Jacobs, 136 Minn. 190, 161 N. W. 525, L. R. A. 1917D, 971; Spratt v. Spratt, 151 Minn. 458, 185 N. W. 509, 187 N. W. 227; State ex rel. Pappenfus v. Kourtz, 173 Minn. 177, 216 N. W. 937; Hervey v. Hervey, 180 Minn. 182, 230 N. W. 479; State ex rel. Olson v. Sorenson, 208 Minn. 226, 293 N. W. 241. In the last cited case prior decisions of this court are fully set out. Ordinarily, courts award the custody and care of children of tender age to the mother, also girls of whatever age to her, if fit and able to give a mother's care. But when testimony clearly discloses, as here, that the mother without cause left her home and Nancy to the father's care, remaining absent for weeks at a time, we feel it our duty to award the custody of the child to a father who has demonstrated his willingness and ability to care for the child when forsaken by its mother.

The testimony given in the district court is not before us, except as referred to in the testimony reported by the referee, but from the findings and accompanying memorandum of Judge Stolberg we are in accord with his conclusion wherein he says:

"The attitude of the mother at the trial impressed us very unfavorably. She stated it was 'my business when I left home and how long I remained away.' She admitted that relator [respondent] tried to give her a good home. Apparently she found more congenial company and surroundings in beer taverns. No reflections are cast on the character of relator [husband]."

We are therefore constrained to award the custody of Nancy to respondent, the father, upon the same conditions as fixed by Judge Stolberg, whose decision is affirmed.