# STATE EX REL. BEVERLY A. GLASIER v. FERN GLASIER AND ANOTHER.

137 N. W. (2d) 549.

July 30, 1965—No. 39,442.

*Olson, Kief & Severson,* for appellant.
*Charles L. Clark,* for respondents.

NELSON, JUSTICE.

The jurisdiction of the District Court of Hubbard County was invoked by petitioner, Beverly A. Glasier, in this habeas corpus proceeding to test the right of respondents, Fern Glasier and Darwin L. Glasier, to the custody of Pamela Jo Glasier, born May 30, 1954, and Cynthia Kay Glasier, born March 22, 1957. Petitioner and respondent Darwin L. Glasier (hereinafter referred to as respondent) are the parents of these children and at the time of the hearing, March 13, 1963, were husband and wife, although petitioner was subsequently granted a divorce by the Superior Court of Spokane County, Washington.

Petitioner and respondent resided in Spokane, where respondent was employed, for several years prior to 1962. In August 1962 respondent enlisted for a 3-year term in the United States Army, following a long period of marital difficulties. On December 18, 1962, he returned to Spokane on leave. On December 20, after telling petitioner he was taking the children out for dinner, he left the State of Washington with them for Park Rapids, Minnesota. On December 21, petitioner instituted an action

for absolute divorce in the Spokane County Superior Court, in which action she sought custody of the children. On that date the court made an order awarding their temporary custody to petitioner, respondent and the children being then in Montana en route to Park Rapids. On December 22, they arrived at the home of respondent Fern Glasier near Park Rapids. On December 24, the summons, complaint, and order of the Washington court were personally served on respondent Darwin Glasier there.

The order required him to return the children to Washington and to appear at a hearing before the Washington court January 18, 1963. Respondent did not return the children and on the date of the hearing made a special appearance by an attorney, but not personally, to move that the action be quashed for want of jurisdiction over himself and the children, based upon an alleged change of domicile. On February 7, 1963, the Washington court entered an order denying respondent's motion and continuing the prior order awarding custody to petitioner in effect. On March 7, 1963, the Washington court entered a judgment of contempt against respondent. At the time of the habeas corpus hearing respondent was restraining the children from going with petitioner to her home in Spokane. His plan for taking care of the children in the immediate future was to leave them with a girl friend in Germany. Petitioner's plan was to have the children live with her in the upstairs of her parents' home in Spokane. Her parents were willing to help her to care for them and to aid her financially if necessary.

The record is not without the usual faultfinding common to both sides where divorce proceedings are commenced after prolonged periods of marital difficulties. We need say only that the preferred forum in which to try the issues raised thereby must of necessity be in the place of the parties' actual residence and domicile, where they have lived their married lives, established their home, and raised their children.

The District Court of Hubbard County, after a full hearing in the habeas corpus proceeding initiated by petitioner to regain custody of the children, denied her petition and awarded respondent their care, custody, and control until the further order of the court, subject to the following specific terms and conditions: That he not remove the children from the State of Minnesota without the approval of the court, after notice to the

petitioner; that he leave said children in the care of his mother, respondent Fern Glasier, until the further order of the court; that petitioner have a right of visitation with the children at all reasonable times and upon all reasonable occasions at the residence of Fern Glasier; that both respondents and petitioner be enjoined from removing the children to any point outside this state.

Petitioner appeals from the judgment thereafter entered, assigning as error: (1) The court erred in refusing to order judgment on the pleadings, awarding custody of the children to petitioner; (2) the court erred in refusing to amend its findings of fact, conclusions of law, and order for judgment to award their custody to petitioner.

One of the questions before us is whether the Minnesota court had jurisdiction to make an award of custody in the habeas corpus proceeding. Another is whether the Washington court had jurisdiction to proceed as it did in the divorce action.

■ It is clear that the District Court of Hubbard County had personal jurisdiction over the parties, but it does not follow that it had jurisdiction to determine the custody of the children contrary to the determination made by the Washington court. The general rule governing jurisdiction to determine custody of children not domiciled in this state, as well as the exception to that rule, was expressed in State ex rel. Larson v. Larson, 190 Minn. 489, 491, 252 N. W. 329, 330:

"The question of jurisdiction as here presented is a new one in this state. An examination of certain fundamental principles of conflict of laws is therefore necessary, bearing in mind always that here we are not dealing with substantive property rights but with the question of the domicil of a child and the jurisdiction of courts to deal with matters of custody, which jurisdiction depends upon a determination of the question of domicil. A proceeding to determine custody of a minor child partakes of the nature of an action *in rem,* the *res* being the child's status or his legal relationship to another. *Except where necessary as a police measure* (see Hartman v. Henry, 280 Mo. 478, 217 S. W. 987—neglected child), it would seem that the only court which has power to fix, to change, or to alter this status is the court of the state in which the minor child is domiciled." (Italics supplied.)

It is clear from the holding in the Larson case that as a general rule only the court of that state in which the minor is domiciled can determine the custody of a child, since the proceeding instituted for that purpose is an action in rem.

State ex rel. Carlson v. Hedberg, 192 Minn. 193, 256 N. W. 91, involved a habeas corpus proceeding, brought on the relation of Wisconsin-appointed guardians to obtain the custody of their wards, who were domiciled in Wisconsin but living in Minnesota. There we affirmed the action of the trial court in awarding custody to the guardians, saying that "[i]t is settled law that the only state which has jurisdiction to appoint a guardian is the state wherein the child is domiciled." 192 Minn. 198, 256 N. W. 93. This language has been interpreted as a holding that the Minnesota court lacked jurisdiction to make an award in favor of the Minnesota parties with whom the children were living, because of the existence of a legal domicile of the children in Wisconsin. Annotation, 4 A. L. R. (2d) 42. However, in In re Adoption of Pratt, 219 Minn. 414, 422, 18 N. W. (2d) 147, 152, we said:

"The jurisdiction of the state extends to all persons within its territorial limits, regardless of the place of their domicile. From earliest times, infants and other persons lacking the physical and mental capacity to protect themselves or their property have been accorded special protection. Formerly, this protective function was regarded as a prerogative of the crown and was exercised by the king as *parens patriae* or the parent, in a peculiar sense, of orphaned and dependent children and other unfortunates * * *."

There we held that the courts of this state have jurisdiction to appoint a guardian for a child domiciled in another state but residing here when in the best interest of the child, the policy of this state being to afford protection to all children residing here, regardless of any status or domicile created under the laws of other states.

In State ex rel. Jaroszewski v. Prestidge, 249 Minn. 80, 81 N. W. (2d) 705, also a habeas corpus proceeding concerning the custody of a minor child, the child had resided continuously in Minnesota for more than 10 years and there had never been an award of custody by any foreign state.

We pointed out that a custody determination does not necessarily purport to alter status and held that this court had jurisdiction to determine custody. We also discussed prior decisions of this court, observing (249 Minn. 88, 81 N. W. [2d] 710):

"* * * In re Guardianship of Kowalke, 232 Minn. 293, 299, 46 N. W. (2d) 275, 281, showed there was no inconsistency between the Larson and Carlson cases and the Pratt case by pointing out that the rule of the Larson case included the exception, *'Except where necessary as a public measure,'* that the Pratt case came within this exception, and also that the appointment of a temporary guardian did not alter status."

On the record before us we cannot say that this case falls within the exception to the rule of the Larson case. It follows that the district court should not have awarded custody of the children in a manner contrary to the custody determination made by the Washington court if that court had jurisdiction.

■■■ The Washington court had jurisdiction over the parties and over the status of the children. It is clear that until December 20, 1962, the domicile of the parties and their children was in Washington, respondent's absence because of his military service having no effect on his domicile in the absence of intention to establish it elsewhere. Polk v. Polk, 158 Wash. 242, 290 P. 861.

On December 21, 1962, the date of the entry of the first custody order, respondent and the children had not yet reached Minnesota. He therefore could not have established a domicile here since physical presence in a state must coincide with intent to make a permanent home in order to establish a new domicile. Thomas v. Thomas, 58 Wash. (2d) 377, 363 P. (2d) 107.

Personal service in the divorce and custody proceedings was made upon respondent in Minnesota pursuant to Washington Rev. Code, § 4.28.180, which reads as follows:

"Personal service of summons or other process may be made upon any party outside the state. *If upon a citizen or resident of this state or upon a person who has submitted to the jurisdiction of the courts of this state, it shall have the force and effect of personal service within this state;* other-

wise it shall have the force and effect of service by publication. The summons upon the party out of the state shall contain the same and be served in like manner as personal summons within the state, except it shall require the party to appear and answer within sixty days after such personal service out of the state." (Italics supplied.)

Section 4.28.185(2) provides:

"Service of process upon any person who is subject to jurisdiction of the courts of this state, as provided in this section, may be made by personally serving the defendant outside this state, as provided in RCW 4.28.180, with the same force and effect as though personally served within this state."

It is settled that the Washington court, pursuant to the service made upon respondent in Minnesota under the statutes quoted above, had the power to render an in personam judgment decree in the divorce action. See, Milliken v. Meyer, 311 U. S. 457, 61 S. Ct. 339, 85 L. ed. 278, which held that domicile in a state is alone sufficient to bring an absent defendant within the reach of the state's jurisdiction for purposes of a personal judgment by means of appropriate substituted service and that personal service without the state met all the requirements of due process. The Milliken case is controlling as to the effect of the service made on respondent in Minnesota.

It is plain also that respondent's surreptitious removal of the children from the State of Washington did not deprive the Washington court of jurisdiction over their status. Nearly all the cases hold that the state of the child's domicile has jurisdiction to determine the custody of the child even though it is without the state. See, Annotation, 9 A. L. R. (2d) 440. The general rule as to the power of the court to make a binding award is stated there as follows (9 A. L. R. [2d] 442):

"Where there is no outstanding judicial award of custody by a foreign court, the courts are unanimous in holding that even though the children may be physically without the state, power in the court exists to make an award of custody of children domiciled within the state."

The authorities also appear to be unanimous in holding that as between parties litigant, once jurisdiction has attached in proceedings for the

custody of a minor child, the subsequent removal of the child from the territorial jurisdiction of the court does not defeat the court's jurisdiction to award custody, in the absence of a change of circumstances sufficient in law to work a change of the domicile of the parents or the one whose domicile controls that of the child. See, Annotation, 9 A. L. R. (2d) 446; Hughes v. Hughes, 180 Ore. 575, 178 P. (2d) 170.

It was held in Breene v. Breene, 51 Colo. 342, 117 P. 1000, that where a husband who had separated from his wife obtained possession of their child and took it from the state without her consent, the trial court, having jurisdiction of both of the parties, had authority upon an application for a writ of habeas corpus to compel the father to return the child and produce him before the court. In White v. White, 77 N. H. 26, 86 A. 353, a divorce proceeding was instituted by the mother in New Hampshire and service was obtained by publication. Shortly before the institution of the divorce proceedings the child was taken by the father to Ohio, but prior to trial of the divorce action the mother had her brought back to New Hampshire. It was held by the court that since the mother was domiciled in New Hampshire the removal of the child by the father to another state did not transfer the child's domicile out of New Hampshire.

In In re Mullins, 26 Wash. (2d) 419, 445, 174 P. (2d) 790, 804, the Washington court said:

"* * * All reasonings and ideas of fair play and justice demand a holding that a parent acting in disobedience to an order of a court, cannot secure a new domicile for his or her child."

See, also, MacWhinney v. MacWhinney, 248 Minn. 303, 79 N. W. (2d) 683, a case in which the mother had taken the child from this jurisdiction to her California home with no intention of returning it, contrary to the terms of a Minnesota divorce decree. Mr. Justice Matson, in regard to such conduct, said (248 Minn. 308, 79 N. W. [2d] 687):

"We also have a special circumstance militating against a change of custody, namely, the mother's wilful violation of the court's final decree. In her testimony she frankly admitted that in 1954, when she exercised the privilege of taking the child from this jurisdiction to her California home, she had no intention whatever of returning the child if she could find any

legal means to prevent it. Her conception of proper legal means was to circumvent and defeat the orders of the Minnesota court, which had jurisdiction of the child's status, by resorting to the court of another jurisdiction. * * * It goes without saying that, in determining or limiting the custodial or visitation rights relating to a minor child, the court may properly take into consideration a parent's wilful violation of its decrees. No young child should be made the victim of a tug of war between parents or between the courts of two conflicting jurisdictions."

See, also, Holton v. Holton, 153 Minn. 346, 351, 190 N. W. 542, 544, 41 A. L. R. 1415, 1418.

While respondent took the children out of the State of Washington at a time when no court order concerning their custody was in existence, we hold that his surreptitious removal of the children did not transfer their domicile out of the state.

■ It seems clear that here there were no circumstances justifying the trial court of this state in ignoring the fact that the court of the state in which the children were domiciled had made an order concerning their custody. Professor Albert A. Ehrenzweig, Walter Perry Johnson Professor of Law at the University of California, analyzes the reasons on which courts base their decisions either to recognize or to refuse recognition of custody awards of sister states in his treatise, Conflict of Laws, pp. 289 to 292. He points out that recognition is sometimes refused on a finding there was a jurisdictional defect in the proceedings; on a finding there has been such a change of circumstances that the question of custody should be re-examined; and on the theory that the state as parens patriae should consider the welfare of the child at the time the inquiry is made. He also points out that when recognition is accorded, it is sometimes placed on the basis of the full faith and credit clause of the United States Constitution.[1] It is not clear that this provision does require recognition. Cf. New York

---

[1] U. S. Const. art. IV, § 1, provides: "Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."

See, also, 62 Stat. 947, 28 USCA, § 1738, implementing the constitutional provision.

ex rel. Halvey v. Halvey, 330 U. S. 610, 67 S. Ct. 903, 91 L. ed. 1133; May v. Anderson, 345 U. S. 528, 73 S. Ct. 840, 97 L. ed. 1221; Kovacs v. Brewer, 356 U. S. 604, 78 S. Ct. 963, 2 L. ed. (2d) 1008.

Another basis for recognizing such awards is comity. In 3 Nelson, Divorce and Annulment (2 ed.) § 33.61, the author makes the following comment:

"But the fact that a decree or provision as to custody is not entitled to recognition and enforcement under the Full Faith and Credit Clause does not disentitle it to be recognized and enforced on the basis of comity. To the contrary, it is held that a custody decree is entitled to due recognition upon principles of comity unless the best interests of the child, due to a change of conditions, otherwise requires."

In Fantony v. Fantony, 21 N. J. 525, 533, 122 A. (2d) 593, 596, the Supreme Court of New Jersey said:

"Comity, in a legal sense, is neither a matter of absolute obligation on the one hand nor a mere courtesy and good will upon the other. * * *

"* * * The rule of comity is grounded in the policy of avoiding conflicts in jurisdiction, unless upon strong grounds, and the general principle that the court which first acquires jurisdiction of an issue has precedence, in the absence of special equities."

Mr. Justice Traynor of the Supreme Court of California in Sampsell v. Superior Court, 32 Cal. (2d) 763, 779, 197 P. (2d) 739, 750, said of a child living in one state but domiciled in another:

"Thus, if the child is living in one state but is domiciled in another, the courts of both states may have jurisdiction over the question of its custody. It does not follow, however, that the courts of both states will exercise that jurisdiction and reach conflicting results. The courts of one state may determine that the other state has a more substantial interest in the child and leave the matter to be settled there."

This court in Doerr v. Warner, 247 Minn. 98, 110, 76 N. W. (2d) 505, 514, stressed the function of comity as follows:

"* * * Since the Minnesota court first acquired jurisdiction, and at a time when the trust res was located in this state, it follows as a matter of

well-recognized comity that such jurisdiction takes precedence and is a bar to the acquirement of a conflicting jurisdiction in another state. Comity has been given increasing recognition whereby the states yield to each other in matters of jurisdiction in order to reduce to a minimum those areas of irreconcilable conflict which delay and tend to defeat the orderly administration of justice."

This court also said in State v. Taran, 253 Minn. 158, 91 N. W. (2d) 444, that under the doctrine of comity the court which first asserts jurisdiction over a person should not be interfered with by another court of a foreign jurisdiction, so as to impede orderly administration of justice.

It appears to be a settled rule in the State of Washington that a parent *may not* change the domicile of his child to the State of Washington by taking him to that state in disobedience of a custody decree of a sister state. See, State ex rel. Marthens v. Superior Court, 25 Wash. (2d) 125, 169 P. (2d) 626; In re Mullins, 26 Wash. (2d) 419, 174 P. (2d) 790. In the recent case of Chandler v. Chandler, 56 Wash. (2d) 399, 406, 353 P. (2d) 417, 422, the Washington court also held:

"Custody decrees of a sister state will not be changed here when the children are not domiciled in this state."

We consider this a sound and desirable rule in the absence of truly exceptional circumstances.

The general rule as to the exclusive character of the jurisdiction of the divorce court has been applied in some cases with the effect of precluding another court from exercising jurisdiction by writ of habeas corpus to recover the custody of a child. Annotation, 146 A. L. R. 1164. Among the cases cited and analyzed in this annotation is In re Morgan, 117 Mo. 249, 256, 21 S. W. 1122, 1123, wherein the Missouri Supreme Court held:

"* * * If a court having jurisdiction of the parties in a divorce suit has the further power to award the custody of children to the party entitled thereto, the question as to such custody will not be adjudged on a writ of *habeas corpus* by another court, but the parties will be remitted to the court in which the divorce suit is pending for directions as to the custody of the children pending that suit. * * * While Mr. Bishop says the rule is not quite so clear when there has been no order for the temporary custody of

the child, still we hold that the rule as above stated is the true one, even where no such temporary order has been made."

It is to be noted that in the case at bar there was an order for the temporary custody of the children issued by the Washington court on December 21, 1962, which after a scheduled hearing was continued in effect on February 7, 1963.

Professor Ehrenzweig concludes that what is perhaps not generally realized is the predominant significance of the factor of "clean hands" in custody cases. He states (p. 293):

"* * * On the one hand, in most cases in which courts have refused to re-examine foreign custody decrees, the spouse seeking such re-examination was a fugitive from the state issuing such decree; and, on the other hand, this element was usually absent where courts have used their independent discretion.

"Thus, the very cases relied on for a (general) recognition rule were decided against a spouse defying the foreign court. * * * And an analysis of the subsequent practice permitted the conclusion that in more than one-half of the cases examined in which the custody orders of a sister state were respected and carried out, the child had been abducted from the complaining parent; or brought into the forum in defiance of such orders; or retained by the resident parent on the occasion of a casual visit or health pilgrimage to the forum. On the other hand, the bulk of the cases in which recognition of a sister state custody decree was refused without the showing of changed circumstances, concerned such decrees which attempted to affect a custody lawfully held either by a forum resident or over a resident child. In this connection references to this criterion of 'clean hands' by both the majority and the dissenters in May v. Anderson [2] seem significant."

The author indicates that in recent years decisions granting full faith and credit or comity to sister state decrees disobeyed by the losing parent have been numerous and that an analysis of the case law of those states in which the recognition of foreign custody awards has been most frequently or significantly litigated in recent years illustrates the increasing relevance

[2] 345 U. S. 528, 73 S. Ct. 840, 97 L. ed. 1221.

of what he has termed the "Washington rule" of "clean hands." See, In re Mullins, 26 Wash. (2d) 419, 431, 174 P. (2d) 790, 797, wherein the court recognized the jurisdiction of an Ohio court to change a custody decree violated by the mother in bringing the child to Washington, saying:

"* * * To hold otherwise would be to put a premium upon wrongdoing by allowing a parent to gain an advantage by disobeying the orders of a court."

See, also, In re Hollibaugh v. Prosser, 58 Wash. (2d) 18, 21, 360 P. (2d) 737, 738.

Professor Ehrenzweig finds that a large number of jurisdictions have clearly shown the inclination to recognize or enforce foreign custody decrees in cases of defiance against such decrees. Tennessee and Colorado have expressly adopted the Washington rule and Alabama has independently developed the same approach. He concludes that the "Washington rule" of "clean hands" appears to represent prevailing authority.

■ It has been held that a state court should not exercise its jurisdiction as parens patriae to protect a nonresident child within its borders except when necessary for the good of the child and that it will not so do to settle conflicting claims of the parents. In McMillin v. McMillin, 114 Colo. 247, 251, 158 P. (2d) 444, 446, 160 A. L. R. 396, 399, the Colorado court said:

"It is true, as urged by respondent's counsel, that the primary and controlling issue is the welfare of the child, but that issue was considered and determined by the Michigan court and cannot and should not be readjudicated here. It further is true that our Colorado court has jurisdiction as parens patriae to protect any child within its borders, notwithstanding its residence elsewhere, and in a habeas corpus proceeding for custody of a child, even before our Rules of Civil Procedure abolished the special forms of pleading and writs, the jurisdiction of the court was broader than the terms of the writ and the proceeding held equivalent to a suit in equity for the maintenance and custody of the child when the facts presented required its protection. Graham v. Francis, 83 Colo. 346, 265 Pac. 690. However, such jurisdiction should never be exercised except when necessary for the good of the child (Cameron v. Wissbeck, 66 Cal.

App. [2d] 884, 153 P. [2d] 385), and the instant proceeding is not predicated on the protection of the child's welfare, but on the conflicting claims of the parents. So far as the court is advised, the state would not be justified in asserting control over the child if found in the custody of either parent."

See, Annotation, 110 A. L. R. 746.

In In re Penner, 161 Wash. 479, 297 P. 757, habeas corpus proceedings to obtain possession of children whose custody had been awarded to relator some years earlier by a Montana divorce decree, the Washington court held that it had jurisdiction to hear the matter on the merits and determine whether changed conditions affecting the welfare of the children required modification of the decree. The court said that in such a case the welfare of the children is the first consideration and indicated that it was proper to inquire carefully into the circumstances, but stated that it would not be proper to assume that the Washington courts are preeminently qualified to determine the order which will best promote the welfare of the child or children whose particular case is being considered, saying (161 Wash. 482, 297 P. 758):

"* * * The courts of other states are guided by this same principle in determining questions involving the custody of minors, and such courts are as well qualified to decide such questions as are the courts of this state."

In that case, custody of two of the parties' children had been awarded to relator by a Montana court. Respondent had taken the children to Washington in contravention of the decree and had deliberately concealed her whereabouts from relator. In disposing of the case the Washington court said (161 Wash. 485, 297 P. 759):

"Respondent's case being based upon her wrongful act in surreptitiously removing the children from the jurisdiction of the Montana court, which conduct on her part, as far as is disclosed by the record, was entirely without excuse or justification, we hold that the trial court erred in dismissing this proceeding, and that an order should have been entered returning the two older boys to the custody of their father.

* * * * *

"The order appealed from is reversed, with instructions to the trial court to enter an order awarding the custody of the minors * * * to appellant, their father, to the end that he may take his sons to his and their home in Montana, where questions relating to the future custody of the children may be further considered and determined by the courts of that state."

In State ex rel. Williams v. Juvenile Court, 163 Minn. 312, 204 N. W. 21, this court in holding a child not to be a dependent child within the meaning of the Juvenile Court Act made the following comment (163 Minn. 314, 204 N. W. 22):

"* * * The little girl was subjected to the jurisdiction of the juvenile court at a time when her domicile was in California. It would be intolerable for this state to take advantage of the temporary presence here of a child, domiciled in another state, for the purpose of making it a ward of Minnesota. The controlling statute is not intended to have such an application to children, however dependent, not domiciled in this state."

See, also, Little v. Little, 249 Ala. 144, 30 So. (2d) 386, 171 A. L. R. 1399, in which the Alabama court stated that a principle of law involved in the case before it was the jurisdiction of the state to regulate the custody of infants found within its territory depends upon their needs then and there existing. The Alabama court quoted the following statement by Mr. Justice Cardozo in Finlay v. Finlay, 240 N. Y. 429, 431, 148 N. E. 624, 625, 40 A. L. R. 937, 938:

"* * * [The jurisdiction of the state] has its origin in the protection that is due to the incompetent or helpless * * *. The residence of the child may not be used as a pretense for the adjudication of the status of the parents whose domicile is elsewhere, nor for the definition of parental rights dependent upon status * * *. Parents so situated must settle their controversies at home. Our courts will hold aloof when intervention is unnecessary for the welfare of the child."

It is clear that no circumstances existed making it necessary for a court of this state to interfere with the custody determination made by the Washington court. That determination was in fact the usual and appropriate one,

since the children were of a tender age and girls. See, State ex rel. Price v. Price, 211 Minn. 565, 2 N. W. (2d) 39.

■ Subsequent to the habeas corpus hearing the Washington court entered a decree granting petitioner an absolute divorce and awarding her custody of the children. Regardless of that fact, the Minnesota district court, as we have held, should have recognized the earlier Washington custody order and ordered that the children be restored to petitioner. We shall therefore consider the effect of the decree only briefly.

In Williams v. North Carolina, 317 U. S. 287, 63 S. Ct. 207, 87 L. ed. 279, 143 A. L. R. 1273, it was held that a divorce decree rendered solely upon constructive notice against a nonresident defendant is entitled to full faith and credit where plaintiff had acquired a bona fide domicile in the state granting the divorce.

In Cummiskey v. Cummiskey, 259 Minn. 427, 431, 107 N. W. (2d) 864, 867, a controlling case in this state, we set out the following general rules:

"* * * (1) The validity of a decree of divorce, where defendant was not personally served with process in the jurisdiction of the forum but received notice by substituted service and did not appear in the proceedings, may be inquired into in the courts of another state, and under such circumstances the decree is subject to collateral attack. (2) Where, however, the jurisdictional facts as to residence were litigated in the court in which the decree of divorce was rendered, the decree cannot be attacked collaterally in another jurisdiction with respect to jurisdictional facts. The jurisdictional fact of domicile in the divorce-granting forum, having been litigated and determined by a judgment of the court, becomes res judicata, and by force of the full faith and credit clause it may not be questioned collaterally in another jurisdiction."

In State ex rel. Lembke v. Bechdel, 37 Minn. 360, 34 N. W. 334, Mr. Justice Mitchell distinguished between writs of habeas corpus issued upon the petition of a prisoner, as a writ of liberty, and those obtained for the purpose of determining which of two parties is entitled to the custody of a child, pointing out that the latter is a case wherein private parties are contesting private rights under the form of proceedings on habeas corpus

and holding an earlier judgment on the issue of custody res judicata in the following language (37 Minn. 361, 34 N. W. 335):

"In our judgment, in such cases, both principle and considerations of public policy require the application of the doctrine of estoppel to judicial proceedings. We therefore hold that a former adjudication on the question of the right to the custody of an infant child, brought up on *habeas corpus,* may be pleaded as *res judicata,* and is conclusive upon the same parties, upon the same state of facts."

This court in the Cummiskey case said that the accepted purpose of a special appearance is to challenge the jurisdiction of the court over the person of the defendant. In the instant case respondent chose to contest the jurisdiction of the Washington court to make an award of the custody of the children by appearing there to assert that his and their domicile was in Minnesota. The question of the domicile of the parties to the divorce action, as well as that of their children, was thereafter argued and then passed upon by the Washington court, but respondent again raised it in the habeas corpus proceedings.

However, where a defendant appears and participates in divorce proceedings, to the extent that he contests the issue of good faith domicile, or has an opportunity to do so, he may not thereafter relitigate the issue by collateral attack in a sister state. See, Henricks v. Henricks, 275 App. Div. 642, 92 N. Y. S. (2d) 338. See, also, Davis v. Davis, 305 U. S. 32, 59 S. Ct. 3, 83 L. ed. 26, 118 A. L. R. 1518; Coe v. Coe, 334 U. S. 378, 68 S. Ct. 1094, 92 L. ed. 1451, 1 A. L. R. (2d) 1376; and Sherrer v. Sherrer, 334 U. S. 343, 68 S. Ct. 1087, 92 L. ed. 1429, 1 A. L. R. (2d) 1355.

■ Domicile of the children and both parents was in Washington when the divorce proceedings were commenced, and the order issued by the superior court of that state awarding temporary custody of the children to petitioner, accompanied by an order to show cause, was served personally on respondent in this state pursuant to the Washington statute. These facts are sufficient to make the custody order binding on all interested parties. (Such personal service of respondent was required before the state of actual domicile of both parents and children could make provisions for the custody and support of the children.) Respondent thereafter made an

appearance before the Washington court, questioning the domicile of the parties and their children by claiming another domicile, obviously a contrived one, and challenging the jurisdiction of the court. There has been no showing that he appealed from the order continuing the initial custody order in effect, which was entered by the Washington court following the hearing on the jurisdictional and domiciliary questions. Instead he refused to comply with an obviously valid order, while his previous surreptitious removal of the children from their domicile made it necessary for petitioner to institute these proceedings. In view of these facts, the trial court plainly should have acceded to the custody determination of the state of the children's domicile.

The order appealed from is reversed and the trial court is instructed to enter an order awarding the custody of Pamela Jo Glasier and Cynthia Kay Glasier to petitioner, so that she may take her daughters to their home in Spokane, where questions relating to the future custody of the children may be considered and determined by the courts of Washington.

Reversed and remanded.