STATE EX REL. NADINE JAROSZEWSKI v. OLGA MAE PRESTIDGE AND ANOTHER.
CHARLES WILLIAM HALLER, A MINOR, BY CHARLES HEMPERLEY, HIS GUARDIAN AD LITEM, AND ANOTHER, INTERVENORS.

81 N. W. (2d) 705.

February 21, 1957—No. 36,723.

*Samuel Saliterman* and *James P. Larkin,* for appellants.

*Joseph L. Nathanson* and *Philip J. Levy,* for respondent.

*George Scott,* County Attorney, and *Theodore R. Rix,* Assistant County Attorney, for intervenors.

FRANK T. GALLAGHER, JUDGE.

Appeal from an order of the district court in habeas corpus proceedings instituted in the District Court of Hennepin County by respondent Nadine Jaroszewski to obtain custody of her 11-year-old son living with appellants, Olga Mae Prestidge and Henry Thomas Prestidge, in Minneapolis. Proceedings were held before the Honorable Levi M. Hall, who on June 24, 1955, made the findings of fact and conclusions of law directing appellants to deliver custody of the child to respondent from which appeal was taken.

The appeal to this court required a de novo determination here pursuant to M. S. A. 589.30. On July 7, 1955, an order was made by this court appointing the Honorable Paul W. Guilford, retired judge of the District Court of Hennepin County, to hear and report all evidence in said matter without findings of fact. Pursuant to

that order testimony was adduced before said referee by both parties, and on October 7, 1955, the referee certified a transcript of the testimony to this court. The matter was placed upon the calendar for oral argument March 5, 1956. Prior thereto respondent filed with this court a motion to strike from appellant's reply brief matters relating to alleged newly discovered evidence and to suppress the same and in the alternative asking that in the event the motion be denied that respondent be given additional time to meet the newly discovered evidence contained in appellant's reply brief. That motion was also heard on March 5, 1956.

On that date both parties appeared through their counsels, at which time it was made to appear by representations of the attorneys for the appellants that the respondent and her husband were in the process of getting a divorce; that they did not reside together and did not maintain a home to which the child might be taken in the event that respondent prevailed in this action. These representations presented a situation materially at variance with the evidence adduced before the referee, Paul W. Guilford, relating to respondent's circumstances at that time. The respondent represented that if given an opportunity to meet the claims of appellants by supplementary hearing, evidence would establish that she had a proper home in which to raise the child. The offer of proof submitted by the respective parties presented a conflict in an important issue in this case and the court thereupon, on March 20, 1956, appointed the Honorable Lars O. Rue, a retired judge of the District Court of Hennepin County, as referee with directions to take supplementary testimony regarding the present marital status of the respondent, also whether or not she intended to reside with her husband and whether divorce proceedings were pending, and such additional evidence as might touch upon the subject of whether the respondent maintains a fit and proper home in which the minor child might reside. Thereafter the referee certified a transcript of the testimony presented in connection with that hearing.

On July 10, 1956, upon the petition to this court of Olga Mae Prestidge, one of the appellants, Charles Hemperley was appointed

guardian ad litem of said minor and was authorized and directed to appear and represent the minor in this action.

A brief résumé of the facts relevant to our determination shows that respondent comes from a home broken by the death of her father when she was ten years old, necessitating her living with brothers and sisters. She was first married during 1942 in Arizona at the age of fifteen years to Elmore W. Haller, and a son, Terry Louis, not involved in these proceedings, was born of that marriage. On October 30, 1944, she separated from her husband and went to Chicago, where she became acquainted with William Andert, son of appellant, Olga Mae Prestidge. Although the evidence is conflicting, she testified that she was pregnant at that time by her husband, Elmore Haller, and she so advised Andert. A few days after meeting Andert she came with him to Minneapolis to stay with Andert's mother and stepfather, the appellants. Respondent and Andert represented that they were married and lived together for a few months as husband and wife. In February 1945, she went on to California and saw her husband, Haller, who had instituted divorce proceedings. She remained with her mother in California until the child concerned in these proceedings was born September 23, 1945. A short time afterward respondent went to Washington, D. C., with the child and stayed with a Mrs. Charles Jones who took care of the baby until respondent returned to appellants' home in Minnesota, approximately six weeks later. After about a month or two in Minnesota, respondent left the baby with appellants and went to California for about six weeks and then to Amarillo, Texas, where she married one Hughes. She then came to Minnesota for her baby and returned to Texas. She and her new husband then moved to Rock Island, Illinois, where both worked and someone took care of the baby. Hughes left her shortly thereafter and she wrote to appellants telling them of her troubles. William Andert then came to Rock Island and took the baby back to appellants in Minnesota with the apparent understanding that the boy would be returned when respondent was able to take care of the child and had a home for him. The child has resided with appellants from November,

1946, has gone under the name of Charles Prestidge, and until recently has believed appellants were his mother and father.

From 1946 until 1951 respondent worked at various jobs in various cities. She began dancing in night clubs in about 1951 and traveled "coast to coast" until finally becoming more or less established in Cleveland, Ohio, where she is now employed at the Gay Nineties night club. Respondent's dancing is characterized as "interpretive dancing," which involves body contortions but not the removal of clothing.

The evidence establishes a somewhat loose moral life on the part of respondent during the entire period considered here, and the police records of Cleveland indicate she was investigated for soliciting for the purpose of prostitution. The evidence also establishes she was married and divorced twice since she left the child with appellants in 1946, making a total of four marriages and divorces. There is also evidence that she held herself out as the wife of a fifth man. At the time this proceeding was begun in district court and during the hearing before the first referee, she maintained that she was "very happy" with her fourth husband, Jaroszewski. The record shows, however, that after that hearing she began suit for divorce, which has now been procured.

Respondent saw her child about three times from 1946 to 1948. In the latter year she began a suit for custody but did not carry it through. She did not see the child again from that time until 1951, and from 1951 to the present she has not seen him except in connection with these proceedings. Her explanation for this was to the effect that she thought appellants had established custody in the 1948 suit which she did not complete. She did make inquiries occasionally concerning his welfare during the 1946 to 1956 period. She made some attempts to regain the child in 1946, 1947, 1948, and 1951. Each time, however, she acquiesced in appellants' reasoning that she had no home for the child and no sure means of taking care of him. Although the respondent said she made between $125 and $150 a week as a dancer, she did not contribute financially to the

child's care. She testified that the letters sent by her containing money were returned unopened.

At the time this suit was originated the respondent had quit dancing and was selling Avon products. She has since returned to dancing. Her hours would require someone to care for the child from 9 p. m. until 4 a. m.

The appellants, although their family history with their own two children is not without fault, have maintained a satisfactory home for the child herein concerned as well as another child of a relative—a little girl—whom they have raised as brother and sister. Testimony in this regard was adduced from their church pastor and neighbors. The child involved herein is healthy, well adjusted, and progressing normally in school, except for some recent disturbances possibly caused by this litigation. The Prestidges would have to be regarded as a family in a rather low income bracket, but Mr. Prestidge has held a job steadily with General Mills since 1934, excepting a five-year period when he engaged in farming. The child testified he liked the Prestidges, called them "Mom" and "Dad," and said he wanted to remain with them.

The legal issues raised by the respondent are: (1) Whether this court has jurisdiction to award custody of the minor child to appellants; and (2) whether the evidence is such as to justify the court in depriving respondent of the custody of her child.

■ In connection with the first issue, respondent reasons that the child takes the domicile of his mother, which is presumably Ohio, and that only the state of domicile can determine custody. She cites State ex rel. Larson v. Larson, 190 Minn. 489, 252 N. W. 329, and State ex rel. Carlson v. Hedberg, 192 Minn. 193, 256 N. W. 91, in support of her position.

The Larson case, *supra*, involved a habeas corpus proceeding in district court upon the petition of a divorced wife challenging the right of her divorced husband to the custody of the minor child of the parties. Although the parties were married in Minnesota they were later domiciled in Iowa, where the divorce was granted. The Iowa court awarded custody of the child alternately to each

parent for six months out of each year. After the divorce decree was entered, the mother returned to Minnesota and reestablished a domicile in Duluth while the father remained in Iowa. At the expiration of one of the six-month residence periods of the child in Minnesota with its mother, the latter first refused to surrender the child to its father, but after some delay, occasioned by a hearing on an order to show cause, she surrendered the child. Before the father could remove the child to Iowa, the mother served on him a writ of habeas corpus challenging his right of custody. At a hearing pursuant to the writ, the trial court made an award of custody of the child to the mother. From that decree the father appealed, contending among other things that our court had no jurisdiction over the minor child. In that case this general rule and an exception to it were stated (190 Minn. 491, 252 N. W. 330) :

"* * * A proceeding to determine custody of a minor child partakes of the nature of an action *in rem,* the *res* being the child's status or his legal relationship to another. Except where necessary as a police measure * * *, it would seem that the only court which has power to fix, to change, or to alter this status is the court of the state in which the minor child is domiciled."

We held there that, during the six-month period in which the child was domiciled in Minnesota, living with her mother, our court had jurisdiction to determine its custody and was not bound by the full faith and credit clause of the constitution to give effect to the Iowa decree.

In the Carlson case, *supra,* decided about four months after the Larson case, a county court in Wisconsin had appointed a general guardian of the persons and estates of two minor orphan children domiciled in Wisconsin, whose parents died while they were domiciled in Wisconsin. The children were brought to Minnesota and were left there with a Mr. and Mrs. Hedberg, who later petitioned for guardianship of the children. In a contest between the Hedbergs and the Wisconsin general guardian, the court awarded custody to the general guardian after stating the rule that the only state which had jurisdiction to appoint a guardian was the state

where the child was domiciled. The court based its decision entirely upon its holding that the court in Wisconsin, where the children were domiciled, had jurisdiction to appoint a general guardian over the children, and upon its determination that the welfare of the children did not require that a guardian be appointed for the children in Minnesota.

It will be noted that the fact situations in both the Larson and Carlson cases are different from the one at bar and that in both those cases the general rule above referred to was not used to achieve the result respondent contends for here, namely, to deny this court power to make a determination on the merits in a custody proceeding because the child, although a resident, is, allegedly, not a domiciliary of Minnesota.

In the instant case we have a situation where the child involved has resided continuously in Minnesota for more than ten years. There has never been an award of custody of the child by any foreign state. The courts are nearly unanimous in holding that, where there is no outstanding judicial award of custody by a foreign court, the court has power to make an award of custody of children present in the state in furtherance of the welfare of the children even though the children may be domiciled without the state. Annotation, 4 A. L. R. (2d) 16.

In In re Adoption of Pratt, 219 Minn. 414, 18 N. W. (2d) 147, this court determined that notwithstanding the fact that the domicile of an illegitimate child was in Tennessee nevertheless the child being lawfully in Minnesota the court could appoint a guardian of the person of the minor child and could render an adoption decree in favor of residents of Minnesota. This court said in that case that the jurisdiction of the state extends to all persons within its territorial limits, regardless of the place where they are domiciled; and explained that from earliest times infants and other persons who lacked the physical and mental capacity to protect themselves or their property had been accorded special protection. This court said there that the state possesses this protective power as an attribute of its sovereignty and exercises the power in the

manner provided by statute. It then went on to say that since the duty of protection extends to all unfortunate and helpless persons the necessity of exercising the state's protective power depends upon the presence of such persons within its territorial limits and not on the place of their domicile or their ownership of property within the state, citing Bliss v. Bliss, 133 Md. 61, 104 A. 467. It further stated that in some cases the broad statement is made that a guardian of the person of an infant may be appointed only at the place of the child's domicile, which is an expression of the rule that ordinarily the appointment of a guardian should be made at the infant's domicile. That rule, however, according to the Pratt case, cannot be followed to the extent that a state may not exercise jurisdiction to appoint a guardian for a resident child, whose domicile is in another state, where the welfare of the child requires such action.

The later case of In re Guardianship of Kowalke, 232 Minn. 293, 299, 46 N. W. (2d) 275, 281, showed there was no inconsistency between the Larson and Carlson cases and the Pratt case by pointing out that the rule of the Larson case included the exception, *"Except where necessary as a police measure,"* that the Pratt case came within this exception, and also that the appointment of a temporary guardian did not alter status.

Thus it appears that proceedings, such as temporary guardianship, which do not alter status can be determined in a state of residence. In re Adoption of Pratt, *supra.* The rule laid down in that case is also in accordance with the rule in Restatement, Conflict of Laws, § 150, which is as follows:

"A temporary guardian can be appointed in any state in which a defective person or a child is found.
*"Comment:*
*"a. Distinction between temporary guardianship and status.* The appointment of a temporary guardian under the rule stated in this Section does not create a status, first, because the court has no jurisdiction over the status of the ward (see § 149), and secondly, because the relation is in its nature local and temporary. In so far

as it affects the child, a temporary guardian is similar to a custodian appointed under § 148."

As indicated above, a custody determination does not necessarily purport to alter status and therefore can be determined in a state of residence. Restatement, Conflict of Laws, § 148, provides that in any state into which the child comes, upon proof that the custodian of the child is unfit to have custody of the child, the child may be taken from him and given to another person. *Comment a* provides: "This action will be effective within the state."

In State ex rel. Ashcroft v. Jensen, 214 Minn. 193, 7 N. W. (2d) 393, involving a somewhat similar fact situation for jurisdictional purposes, this court took jurisdiction and denied custody to the mother even though the question of jurisdiction apparently was not argued.

It is our opinion, under the particular circumstances here, that this court has jurisdiction to determine custody of the child involved.

■ We next come to the question whether the evidence is such as to justify this court in leaving custody of the child with the appellants. The law to be applied in the determination of custody requires that the welfare and best interests of the child be the basis of the decision. 6 Dunnell, Dig. (3 ed.) § 2800; 14 Dunnell, Dig. (3 ed.) § 7297; 8 Dunnell, Dig. (3 ed.) § 4133, and cases cited.

However, it is fundamental that parents have a natural right to the child and in order to deprive a parent of custody in favor of a third person there must be grave reasons shown. Factors to establish such grave reasons would be neglect, abandonment, incapacity, moral delinquency, instability of character, or inability to furnish the child with needed care. State ex rel. Nelson v. Whaley, 246 Minn. 535, 75 N. W. (2d) 786. There is a presumption that a mother is a fit and suitable person to care for her child and the burden is on the contestant to overcome that presumption. State ex rel. Platzer v. Beardsley, 149 Minn. 435, 183 N. W. 956.

While it will serve no useful purpose to go into all the details of the varied matrimonial life and activities of the respondent in the

case at bar, it is our opinion that the welfare of the child involved will be best served by granting custody to the appellants. It is always difficult for a court to decide that a natural mother shall be deprived of the custody of her child. However, under the facts and circumstances here, we feel that it will not be for the best interests of the child at his tender age to take him away from the home and environment, church and school connection, which he has known up to now, and place him in the custody of respondent.

The record shows that he has been raised and cared for by appellants since he was a few months old; that they still desire to have him live with them; and that the boy seems happy and contented with his present home and environment. We believe that a serious emotional upset could result if a transfer of custody were made at this time. One of the considerations in our decision is the fact that there has been no satisfactory showing of a stable home or proper environment if custody were given to the respondent, nor has there been any convincing showing that her type of work and life have changed sufficiently so that the child should now be placed in her custody.

We realize that respondent has apparently not had the advantage of a sound and secure home during her own childhood and adolescence, which factor may have influenced her life. While her numerous divorces, her somewhat questionable moral life, and her type of work may not, standing alone, be sufficient to determine our decision, the combination of them all demonstrates an instability of character which leaves grave doubts as to her ability at present to furnish the child with the needed care and home he requires, although her persistence through the years in attempting to regain control of the child demonstrates some affection which cannot be overlooked.

Respondent questions the court's right to utilize the report of the Hennepin County probation office. On oral argument the question of the report of the Hennepin County welfare agency was discussed and the court requested that the reports be filed in this court. While we considered the record here, in itself, sufficient for our determination of this case, this court did refer to an investigation made in

Oregon in the State ex rel. Ashcroft v. Jensen case, *supra,* a custody case where the court was chiefly concerned in the welfare of a child.

Reversed.

JUDGE THOMAS GALLAGHER took no part in the consideration or decision of this case.