Stephen Anthony MIZE, Jr., Respondent,

v.

Kelly Joanne KENDALL, Appellant,

and

Michael John Rosman, et al., Intervenors, Appellants.

Michael John Rosman, et al., Petitioners, Appellants,

v.

Kelly Joanne Kendall, Appellant,

Stephen Anthony Mize, Jr., Respondent.

No. C9–00–597.

Court of Appeals of Minnesota.

Jan. 30, 2001.

Review Denied March 27, 2001.

Pamela J. Waggoner, Waggoner Law Office, Minneapolis, MN, for respondent.

Wright S. Walling, Nathalie S. Rabuse, Walling & Berg, P.A., Minneapolis, MN, for appellants.

Considered and decided by CRIPPEN, Presiding Judge, RANDALL, Judge, and KALITOWSKI, Judge.

## OPINION

CRIPPEN, Judge

Because the trial court determined an attorney-fee award that is not permitted under the governing legal standards, we reverse the award of fees in favor of respondent Stephen Mize, Jr. Because the trial court did not abuse its discretion in placing custody of the child with respondent, we affirm the determination.

## FACTS

Appellant Kelly Kendall found out she was pregnant in September 1997. Before her daughter was born in May, Kendall and respondent, the child's putative father, decided to place the child for adoption with appellants Jan and Michael Rosman. The Rosmans took the child (E.D.K.) home from the hospital after her birth.

After E.D.K. was born, respondent decided he wanted custody. Within 30 days of E.D.K.'s birth, respondent registered with the Father's Adoption Registry and commenced a paternity proceeding in which he sought custody. Blood tests revealed respondent 99.999% likely to be the father and the court adjudicated his paternity in September 1998. The Rosmans intervened in the proceedings with a third-party custody petition. Appellant Kendall supported the Rosmans, and counsel for appellants represented both of these parties. After many disputes, respondent's visitation of the child began in December 1998.

The five-day custody hearing took place in October 1999. The trial court placed sole-physical and sole-legal custody with respondent, ordered the Rosmans and Kendall to pay respondent's attorney fees, and ordered Kendall to pay child support. The court subsequently amended its order to make the Rosmans the sole obligors on the order for paying fees.

The Rosmans appeal the attorney-fee award, and appellant mother challenges the judgment placing custody with respondent and ordering her to pay child support.

## ISSUES

1. Did the trial court err by awarding attorney fees to respondent?

2. Did the trial court abuse its discretion by awarding custody to respondent?

## ANALYSIS

### I. Attorney Fees

■ In analyzing this case, we acknowledge the magnitude of the problem of legal fees in the course of judicial efforts to lawfully determine the placement of child custody, especially where, as in many cases, it appears that all of the parties have proceeded in good faith. It is undisputed that respondent incurred $62,278.24 in legal fees from the time the court adjudicated his paternity until the end of the dispositive hearing, including $17,653.65 in the last five days of litigation. The record gives us no reason to believe that the collective expenses of the other parties were less. The significance of the high costs is enlarged by the importance of the issues in this case for each of the parties. Determining the justifiable placement of child custody is a complex matter with grave implications for the child and the interested adults.

Recognizing the awesome problem of legal costs faced by parties with legitimate custody claims, numerous particular concerns arise. Does the potential cost of attorney fees signal a need to abandon legitimate claims? Similarly, does the

prospect for a judicial order requiring payment of another party's fees discourage future parties from asserting legitimate claims? Equally important is the question of fairness when a party succeeds in a custody dispute but with the misfortune of suffering great expense: do the interests of justice, and principles of fairness and equity, dictate allocation of some of these costs to the unsuccessful party? Policymakers will also question whether the problem of fees dictates more clarity in substantive-law standards so that extended litigation occurs less often, and unreasonable litigation is more certainly recognizable.[1]

Notwithstanding these concerns, the legislature has dictated a narrow prospect for awarding fees. The statute mandates the court to award attorney fees if it finds that "the fees are necessary for the good-faith assertion of the party's rights in the proceeding"; "the party from whom fees, costs, and disbursements are sought has the means to pay them"; and "the party to whom fees, costs, and disbursements are awarded does not have the means to pay them." Minn.Stat. § 518.14, subd. 1 (2000).[2] The statute also provides that the trial court may, in its discretion, award "additional" fees "against a party who unreasonably contributes to the length or expense of the proceeding." Id.[3] The trial court dealt directly with the second of

these standards and tangentially with the first.

## A. Unreasonable conduct

■ The trial court determined the Rosmans knew that "adoption was not possible" within one month of the child's birth. The court's findings suggest that intervenor caretakers and the natural mother proceeded unreasonably on custody claims by "relying only" on the standard of law respecting the best interests of the child and "overlook[ing] the presumption that the biological parent [the father, in the circumstances of this case] is entitled to custody unless 'grave and weighty' reasons exist to separate a child from her biological parent."[4] The court observed that appellants made "no attempt to prove that such reasons exist," and there were in fact none.

After a thorough reference to precedents, the trial court based its rationale principally upon statements in State ex rel. Jaroszewski v. Prestidge, 249 Minn. 80, 89, 81 N.W.2d 705, 710 (1957)—erroneously attributed to Wallin v. Wallin, 290 Minn. 261, 187 N.W.2d 627 (Minn.1971)—and the supreme court's observation in an earlier case that in order to grant custody to a third party, there must be "a grave reason growing out of neglect, abandonment, incapacity, moral delinquency, instability of character, or inability to furnish the child with needed care." State ex rel. Nelson v.

1. Justice Kennedy has noted recently that the best-interests standard has "been criticized as indeterminate, leading to unpredictable results," and attorney fees alone might destroy a parent's "hopes and plans for the child's future." Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 2079, 147 L.Ed.2d 49 (2000) (Kennedy, J. dissenting) (citation omitted).

2. In parentage cases, child support and other matters not addressed by the parentage statute are decided under chapter 518. Minn. Stat. § 257.66, subd. 3 (2000); see also Pitkin v. Gross, 385 N.W.2d 367, 371 (Minn.App. 1986) (applying Minn.Stat. § 518.14 to attorney-fee issue in parentage case).

3. Because the record does not sustain a conduct-based award of fees, we do not examine

whether such an award is also precluded by law in the absence of a companion determination to award need-based fees. As noted in the text of the opinion, the discretionary power of the court for a conduct-based award, provided as the second of the bases for an award of fees, is stated in terms of the court's authority to award "additional" fees and costs. Minn.Stat. § 518.14, subd. 1 (2000).

4. Respondent also contends that attorney fees are warranted because the Rosmans attempted to delay Mize's visitation. There is no showing that any significant expenses have been attributed to the month-long delay in Mize's visitation or that the Rosmans did not have good-faith concerns about whether Mize's visitation was appropriate at that time.

*Whaley,* 246 Minn. 535, 545, 75 N.W.2d 786, 792 (1956). All of the parties recognize the indisputable reality that in order to deprive a parent of custody, grave reasons must be shown. *See Durkin v. Hinich,* 442 N.W.2d 148, 153 (Minn.1989); *Wallin,* 290 Minn. at 265–66, 187 N.W.2d at 630–31; *State ex rel. Jaroszewski,* 249 Minn. at 89, 81 N.W.2d at 710; *State ex rel. Nelson,* 246 Minn. at 545, 75 N.W.2d at 792; *State ex rel. Platzer v. Beardsley,* 149 Minn. 435, 438, 183 N.W. 956, 958 (1921); *In re Custody of N.M.O.,* 399 N.W.2d 700, 702–03 (Minn.App.1987). But contrary to the trial court's evident conclusion, it is not clear that "grave reasons" are confined to shortcomings on the part of a natural parent. Two critical precedents demonstrate that the Rosmans did not proceed unreasonably because other considerations exist for placing custody with a third party.

■ *Wallin* presumed biological parents are entitled to custody "unless" parental shortcomings exist "or unless" such custody is not otherwise in the best interests of the child.[5] *Wallin,* 290 Minn. at 266, 187 N.W.2d at 630. The *Wallin* court contrasted these alternative doctrines for awarding custody to a third party:

> The first of these doctrines stands for the proposition that a mother is entitled to the custody of her children unless it clearly appears that she is unfit or has abandoned her right to custody, or unless there are some extraordinary circumstances which would require that she be deprived of custody. The second doctrine is the so-called best-interest-of-the-child concept, according to which the welfare and interest of the child is the primary test to be applied in awarding custody.

*Id.* at 264, 187 N.W.2d at 629 (citation omitted). Accordingly, extraordinary circumstances may substitute for unfitness and abandonment; in any event, the overriding consideration is the child's best interests. *Id.* at 265, 187 N.W.2d at 630; *see also State ex rel. Flint v. Flint,* 63 Minn. 187, 189, 65 N.W. 272, 273 (1895) (introducing the abiding, "cardinal principle" of Minnesota child-custody law that regards the best interests of the child as "paramount to the claims of either parent"). In fact, the very notion of unfitness incorporates the thesis that the child's welfare demands and requires being left with third parties. *Cf. State ex rel. Lehman v. Martin,* 95 Minn. 121, 122, 103 N.W. 888, 889 (1905) (noting that a child's welfare could compel granting custody to a third party).

The concepts of *Wallin* are given modern respect in *Durkin v. Hinich,* 442 N.W.2d 148 (Minn.1989). *Durkin* involves circumstances in some respects similar to those of the immediate case. There, the natural parents consented to a three-year-old's placement with a third party. *Id.* at 150. One month later, the mother reconsidered and asked for the return of the child. *Id.* at 150–51. The child had been with the third party for 13–14 months when the trial court decided that custody should remain with that caretaker. *Id.* at 150. Following the "guiding principle" in all custody cases seeking the best interests of the child, and without suggesting that the trial court made any finding of unfitness, the supreme court affirmed the trial court's identification of "grave and weighty" reasons for placement with a third party. *Id.* at 152–53. The three reasons were (1) the child had been integrated into another home with the initial consent of the parents and separation would be detrimental; (2) expert testimony showed that the child at age three was two years emotionally delayed, which evi-

---

5. A preference for the biological parent is embedded in the notion of the best interests of the child but gives way when the overall best-interest considerations lead in a different direction. *In re Custody of N.M.O.,* 399 N.W.2d 700, 703 (Minn.App.1987); *cf. Fish v. Fish,* 280 Minn. 316, 321, 159 N.W.2d 271, 274 (1968) (finding the principle that custody of young children is usually best vested in the mother subordinate to the "controlling principle that the overriding consideration in custody proceedings is the child's welfare") (citations omitted).

denced parental shortcomings; and (3) all experts who testified said that the best interests of the child dictated third-party placement. *Id.* at 153.

As the trial court recognized, each of the determinants in cases like these is fact specific. This case is not the same as *Durkin.* In addition to evidence of emotional delay in *Durkin,* there was evidence that the mother was unable to focus on meeting the needs of the child, had little control over the child, and there was a disputed level of attachment. Moreover, under *Wallin* (at least as the concept was understood in 1971), integration of the child in the home of a third party, by itself, did not constitute grounds for placement with that caretaker. *Wallin,* 290 Minn. at 267, 187 N.W.2d at 631.

It was not unreasonable for the Rosmans to seek a judicial determination in the circumstances of this case where the court-services personnel determined that E.D.K.'s interests would be best served by placement with the Rosmans; E.D.K was bonded and attached to Jan Rosman, her primary caretaker; expert testimony revealed that E.D.K.'s separation from her primary caretaker would be harmful and disruptive; the court found in November 1998 that respondent admitted he had neither read nor reviewed any parenting materials; Jan Rosman, E.D.K.'s primary caretaker, had concerns about respondent's parenting abilities because during his visitation E.D.K. almost fell off a couch when respondent was not paying attention, respondent seemed unaware or unconcerned that E.D.K. needed her diaper changed, and respondent seemed generally unaware of how to care for a child; court-services evaluators found that respondent's commitment to parent E.D.K. was unclear because he "does not inquire about her needs"; the court found in February 1999

that Jan Rosman's and the court-services personnel's observations of respondent warranted requiring respondent to complete a parenting class; and, as in *Durkin,* we have the integration factor created by natural parents who wrestled initially with surrendering custody and agreed to permit adoption.[6]

The trial court specifically attributes unreasonableness to the Rosmans in questioning respondent's paternity before the referee, seeking review of that decision in the trial court, and "most seriously" in retaining custody after learning they could not adopt the child. But the trial court ordered fees only for the time period after the paternity adjudication and we have concluded that retaining custody after defeat of the proposed adoption was not unreasonable in light of the placement issue that remained in the aftermath of the failed adoption.

## B. Financial Considerations

■ The trial court found that respondent needs financial help to pay for his attorney and that the Rosmans have the means to contribute to payment of those costs. The court did not find, and it is not asserted, that the father needed an award of fees for the good-faith assertion of his rights in the proceeding. There can be no question that he asserted his rights in good faith, and it was not shown that his financial circumstances limited his ability to assert his rights. Indeed, in reviewing the trial court's temporary order when respondent asked for financial assistance in the form of attorney fees, the court determined that payment of fees by appellants was not necessary.

Further, respecting both the need-based and conduct-based standards, although the court spoke through a referee warning the

---

**6.** Here, as in *Durkin,* much of the integration occurred by reason of the proceedings. It is a necessary reality that child-custody litigation includes not only expense but delay. As the trial court noted, bonding and attachment were attributable to the length of the proceed-

ings. *See Sefkow v. Sefkow,* 427 N.W.2d 203, 212 (Minn.1988) (finding that circumstances resulting from the length of litigation can be crucial to determining the child's best interests).

Rosmans that the court would give serious consideration to the rights of the biological parents, neither the referee nor the court advised them that fees would be awarded or that the court viewed their concerns about the best interests of the child as frivolous or unreasonable. *Cf. Uselman v. Uselman,* 464 N.W.2d 130, 143 (Minn.1990) ("[T]he attorney or party must have fair notice of both the possibility of a [Rule 11] sanction and the reason for its proposed imposition.").

The trial court "shall" make an attorney-fee award in the event the evidence warrants findings that meet the need test (an amount "necessary to enable a party to carry on or contest the proceeding") of the statute. Minn.Stat. § 518.14, subd. 1. But there is neither a mandate nor discretion to award such fees without those findings and the evidence to sustain them.

## II. Custody

▮▮▮▮ Appellant Kendall contends that the trial court's custody determination should be reversed because the court gave undue weight to her initial commitment to adoption. An appellate court will not reverse a custody determination unless the trial court abused its discretion. *Maxfield v. Maxfield,* 452 N.W.2d 219, 221 (Minn. 1990).

The trial court's evaluation of the best-interest factors went beyond the matter of the mother's initial choice for placement. In support of its decision to award sole-physical and sole-legal custody to respondent, the court cited appellant mother's admission that she felt emotionally unable to support the child and also noted that she did not establish a sibling relationship between E.D.K. and her son, there was no evidence of a bonded relationship of appellant with the child, she made no indication that it was important for E.D.K. to develop relationships with her grandparents, aunts, and uncles, and she would be less disposed than the father to make sure the child remained in contact with the other parent. The court found that respondent would be more disposed than appellant "to encourage and permit frequent and continuing contact between" E.D.K. and her other parent, and expert testimony showed that during respondent's visitation he was the main caregiver, he was sensitive and responsive to E.D.K.'s needs, E.D.K. was attached to respondent in that setting, and there was a positive and happy atmosphere during visitations. We cannot say the trial court abused its discretion in these circumstances.

▮▮▮▮ We affirm the trial court's child-support determination because the court did not err in placing custody of the child and the court had evidence permitting it to make an income calculation. The trial court has broad discretion to provide for the support of the parties' children. *Rutten v. Rutten,* 347 N.W.2d 47, 50–51 (Minn. 1984). Its findings on net income for purposes of child support will be affirmed on appeal if those findings have a reasonable basis in fact and are not clearly erroneous. *State v. Tinker,* 601 N.W.2d 468, 470 (Minn.App.1999); *Hicks v. Hicks,* 533 N.W.2d 885, 886 (Minn.App.1995).

Finally, we grant respondent's motion to strike portions of appellants' brief that were outside the record and we have not considered those materials. Respondent's motion for attorney fees on appeal is denied.

### DECISION

The trial court's award of attorney fees to respondent was inappropriate under governing legal standards, and we reverse that award. We affirm the court's placement of legal and physical custody of the child, which did not constitute an abuse of the court's broad discretion. We decide child support questions and motions as previously stated in this opinion.

**Affirmed in part and reversed in part; motion to strike granted and motion for fees denied.**