*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1314**

In re the Custody of K.K.N.

Connie Jean Raby, et al.
Appellants,

vs.

Bradley Aubrey Slater,
Respondent.

**Filed June 17, 2024
Affirmed
Connolly, Judge**

Dakota County District Court
File No. 19HA-FA-21-623

Jason C. Brown, Barna, Guzy & Steffen, Ltd., Coon Rapids, Minnesota (for appellants)

Schuyler G. Troy, Althea M. Huyser, Fredrikson & Byron, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Wheelock, Presiding Judge; Connolly, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**CONNOLLY**, Judge

In this third-party-custody dispute, appellants argue that the district court abused its discretion in awarding sole legal and sole physical custody to respondent and erroneously failed to consider a father's constitutional right to parent his child. We affirm.

# FACTS

Appellant Connie Raby (grandmother) and respondent Bradley Slater (grandfather) went through an "acrimonious" divorce in 2010. Several years later, in October 2018, grandmother and grandfather's daughter, Lauren Koffi N'Guessan (mother), married appellant, Obin Koffi N'Guessan (father), who grew up in Africa, and moved to the United States in 2016. Father and mother then had a child, born on June 11, 2019.

Mother and father separated in January 2020. After the separation, the child resided primarily with mother. Father was not actively involved in the child's life.

In September 2020, mother was murdered by her boyfriend. Over the next few months, father, grandmother, and grandfather were involved in caring for the child. But in May 2021, father and grandfather executed a delegation of parental authority (DOPA), wherein father delegated his parental authority over the child to grandfather and grandfather's partner for a period of one year. It is undisputed that, since that time, the child has primarily resided with, and been cared for by, grandfather.

In November 2021, grandmother filed a petition to establish custody and parenting time with the child. Grandmother sought sole legal and sole physical custody of the child or, in the alternative, "joint legal custody with [father] with sole physical custody being awarded to [grandmother], subject to Court-ordered parenting time for . . . father." Father answered and counter petitioned, seeking a dismissal of grandmother's petition, and asserting that he is "in the process of having [grandfather] adopt [the child] permanently because he is in the best position to provide a stable and nurturing environment for him."

2

Grandfather moved to intervene, and later joined father's motion to dismiss grandmother's petition on the ground that grandmother lacked standing to seek custody of the child because she did not qualify as an "interested third party" under Minn. Stat. § 257C.03, subd. 7 (2022). The motion to dismiss was denied.

The parties participated in court-ordered mediation in April 2022. About this time, father began having reservations concerning grandfather adopting the child, and during mediation, father told grandfather to "stop the adoption process." Ultimately, the parties were unable to reach a mediated settlement, and in September 2022, grandfather filed a counter petition seeking a determination that he is the de facto custodian of the child, and an award of sole legal and sole physical custody of the child. Grandfather also sought an award of parenting time for father and an award of grandparent visitation for grandmother, subject to certain conditions. Father and grandmother[1] subsequently filed stipulated findings of fact and a consent decree requesting that they be awarded joint legal and physical custody of the child, subject to grandfather's visitation with the child. The district court declined to adopt the consent decree.

A trial was held at which the following witnesses testified: father and his wife, grandmother and her new husband, grandfather and his partner, grandfather's neighbor, the child's current daycare provider, and the child's daycare provider from 2020 through April 2021. Following trial, the district court determined that grandfather "qualifies as a de facto custodian within the meaning of Minn. Stat. § 257C.01 [(2022)]" because grandfather "has

---

[1] Father and grandmother will be referred to collectively as "appellants."

been the primary caretaker of the . . . child since April 28, 2021," and "has provided the majority of all food, clothing, shelter, health care, and education" for the child since that time. The district court also determined that grandmother is an interested third party after examining the factors established in Minn. Stat. § 257C.03, subd. 7(b) (2022). The district court then examined the best-interests factors and the additional joint-custody factors, and determined that "it is in the best interests of the . . . child for Grandfather to be granted primary custody" of the child. The district court, therefore, awarded sole legal and sole physical custody of the child to grandfather, subject to a parenting-time schedule for father and grandparent visitation for grandmother. Father and grandmother appeal.

## DECISION

### I.

Appellants challenge the district court's decision to award sole legal and sole physical custody of the child to grandfather. This court reviews a district court's third-party custody determination for abuse of discretion. *Lewis-Miller v. Ross*, 710 N.W.2d 565, 568 (Minn. 2006). A district court abuses its discretion by "making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985). We will uphold a district court's findings of fact unless they are clearly erroneous. Minn. R. Civ. P. 52.01.

Under the clear-error standard of review, we evaluate the evidence in a light favorable to the district court's findings. *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021); *see Ewald v. Nedrebo*, 999 N.W.2d 546, 552 (Minn. App. 2023) (applying *Kenney* to a district court's best-interests findings), *rev. denied* (Minn.

4

Feb. 28, 2024). In doing so, we do not reweigh the evidence, engage in fact-finding, or reconcile conflicting evidence. *Kenney*, 963 N.W.2d at 221-22. "When the record reasonably supports the findings at issue on appeal, it is immaterial that the record might also provide a reasonable basis for inferences and findings to the contrary." *Id.* at 223 (quotation omitted). And we need not provide "an extended discussion of the evidence" to demonstrate that the findings of the district court are correct. *Id.* at 222 (quotation omitted). Rather, our "duty is fully performed" after the court has "fairly considered all the evidence and . . . determined that the evidence reasonably supports the decision." *Id.* (quotations omitted).

Under chapter 257C, a person who is not a parent of the child at issue may, by petition or motion, seek custody of the child as either a "de facto custodian" or an "interested third party." Minn. Stat. § 257C.03 (2022); *see* Minn. Stat. § 257C.01, subds. 2(a), 3(a). If two or more parties seek custody of a child, the court must consider and evaluate all relevant factors under section 257C.04, subdivision 1, in determining the best interests of the child. Minn. Stat. § 257C.04, subd. 1(a) (2022). And if either joint legal or joint physical custody is sought, the district court must consider the factors set forth in Minnesota Statutes section 257C.04, subdivision 2 (2022). *Id.*, subd. 2 (2022).

Appellants argue that the district court abused its discretion in its analysis of (1) the best-interests factors set forth in section 257C.04, subdivision 1; and (2) the joint-physical-custody factors contained in section 257C.04, subdivision 2. These arguments are addressed in turn.

5

*A.*     ***Best-interests factors***

In determining a child's best interests, a court must consider the following factors:

> (1) the wishes of the party or parties as to custody;
> (2) the reasonable preference of the child, if the court deems the child to be of sufficient age to express preference;
> (3) the child's primary caretaker;
> (4) the intimacy of the relationship between each party and the child;
> (5) the interaction and interrelationship of the child with a party or parties, siblings, and any other person who may significantly affect the child's best interests;
> (6) the child's adjustment to home, school, and community;
> (7) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
> (8) the permanence, as a family unit, of the existing or proposed custodial home;
> (9) the mental and physical health of all individuals involved . . . ;
> (10) the capacity and disposition of the parties to give the child love, affection, and guidance, and to continue educating and raising the child in the child's culture and religion or creed, if any;
> (11) the child's cultural background;
> (12) the effect on the child of the actions of an abuser, if related to domestic abuse . . . that has occurred between the parents or the parties.

Minn. Stat. § 257C.04, subd. 1(a).

A district court "must make detailed findings on each of the [best-interests] factors and explain how the factors led to its conclusions and to the determination of the best interests of the child." *Id.*, subd. 1(b). And a district court "may not use one factor to the exclusion of all others." *Id.*

6

Appellants acknowledge that the "district court made the requisite [best-interests] findings," but argue that the findings related to factors one, three, and seven are not supported by evidence in the record. Thus, appellants argue that the "award of sole legal and physical custody in favor of Grandfather is clearly erroneous and must be reversed."

*The wishes of the party or parties as to custody*

With respect to the first best-interests factor, the district court found that the "parties are at odds as to custody. Father originally supported Grandfather adopting the minor child but now seeks joint custody with Grandmother, with Grandmother having the majority of parenting time." The district court then found:

> Father's position has vacillated through these proceedings. Father appeared . . . to be overwhelmed by the tragic circumstances of the case. Further, the clearly acrimonious and contentious relationship between Grandmother, Grandfather and their respective partners likely contribute[d] to Father's difficulty in making consistent and sound decisions for the child. The Court is concerned that both Grandmother and Grandfather have exerted influence over Father, attempting to sway and/or persuade him to align with their positions.

Ultimately, the district court determined that "[t]his factor is neutral."

Appellants take issue with the district court's findings that father has "vacillated" throughout the proceedings and that he is "overwhelmed" by the circumstances of the case. Appellants assert that, instead, father is a "highly intelligent individual" who only changed positions "once during these proceedings" after he "learned the truth" about grandfather's purported manipulation. Appellants argue that, although "record evidence demonstrates

that Grandfather has exerted inappropriate influence over Father," there is no evidence that grandmother had done the same.

Appellants' arguments are unpersuasive. The district court did not find that grandmother inappropriately influenced father. Rather, the district court expressed concern that "both Grandmother *and* Grandfather have exerted influence over Father." (Emphasis added.) This finding is supported by the record. The record is replete with evidence indicating that both grandmother and grandfather have discussed their wishes with father and attempted to sway him to support their respective positions. In light of this evidence, it was well within the district court's discretion to express concern that father would be used as a "pawn" by both grandmother and grandfather.

Moreover, the record reflects that father executed a DOPA in May 2021. The record also reflects that father sought to have grandmother's petition dismissed, and, in his answer to the petition, father expressed his desire that grandfather adopt the child. But during the pendency of these proceedings, father changed his mind and now supports grandmother's position. In fact, grandfather testified that father even mentioned that, after this proceeding started, he was "just going to send [the child] back to the Ivory Coast." Father's change in heart, going from one end of the spectrum to the other, along with his threat to take the child to Africa, supports the district court's finding that father has "vacillated" during these proceedings. And although appellants are correct that the record shows that father is a highly intelligent individual, the record also shows that this is a sad case involving tragic circumstances in which parents went through a contentious divorce, then lost their daughter in a senseless murder, and still struggle to get along. Thus, the district court's findings

8

related to this best-interests factor, and its determination that the factor is neutral, are not against logic and the facts in the record.

*The child's primary caretaker*

With respect to the third best-interests factor, the district court found that mother acted as the child's primary caretake prior to her death, and that "[b]etween September of 2020 and April of 2021, the . . . child was cared for by a combination of Father, Grandmother, and Grandfather." But the district court found that the child has been primarily cared for by grandfather since April 28, 2021. The district court, therefore, determined that this factor favors grandfather.

Appellants argue that the district court's findings with respect to this factor are clearly erroneous because they fail to account for "the level of Grandfather's interference with [the child's] relationship with his Father." To support their position, appellants refer to statements grandfather allegedly made to father casting grandmother as unsupportive of father. And appellants contend that the district court's findings fail to account for grandfather's unwillingness to permit the child to spend time at father's residence.

Despite appellants' argument to the contrary, the record supports the district court's finding that grandfather encouraged father to spend time with his son. For example, grandfather testified that he explained to father "many times," that he was "welcome in [grandfather's] home." Grandfather also testified that he does not "want to keep [father] from his son," and that he "think[s] it's in [the child's] best interest to see his dad." Moreover, the record reflects that, throughout these proceedings, grandfather explicitly sought an award of parenting time to father. Although appellants refer to evidence

conflicting with grandfather's testimony that he was willing to let father see the child, the district court did not find this evidence to be credible, and we defer to that determination. *See J.W. ex. rel. D.W. v. C.M.*, 627 N.W.2d 687, 693 (Minn. App. 2001) (stating that a reviewing court views the record in the light most favorable to the district court's findings and defers to a district court's credibility determinations), *rev. denied* (Minn. Aug. 15, 2001). Finally, the record fully supports the district court's finding that the child has been in grandfather's primary care since April 28, 2021. As such, the record supports the district court's findings with respect to the third best-interests factor.

> *The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity*

Concerning the seventh best-interests factor, the district court found that the child "has resided full-time with Grandfather since late-April of 2021, a period of over two . . . years," and that the child "appears to be very well adjusted in his current situation." The district court also found that the child is "still very young, having turned four . . . recently," and that "[f]or a child of his age, it is highly desirable to maintain continuity in all aspects of the minor child's life to the greatest extent possible." Consequently, the district court found that "[t]his factor strongly favors" grandfather.

Appellants challenge the district court's analysis of this best-interests factor, arguing that the district court erroneously considered the amount of time the child has spent with grandfather since these proceedings were initiated. To support their position, appellants cite Minn. Stat. § 257C.01, subd. 2(b), which states that "any period of time after a legal proceeding has been commenced and filed must not be included in determining whether

10

the child has resided with the individual for the required minimum period." But the statute cited by appellants involves a determination of whether an individual is a de facto custodian. *See* Minn. Stat. § 257C.01, subd. 2 (defining de facto custodian). Appellants have not challenged the district court's determination that grandfather meets the criteria to qualify as the child's de facto custodian under that statute.

Moreover, the language cited by appellants does not appear in factor seven of the best-interests factors. *See* Minn. Stat. § 257C.04, subd. 1(a)(7). Instead, the factor requires the court to consider "the length of time the child has lived in a stable, satisfactory environment." *Id.* And there is nothing in the plain language of the statute containing an exception as to whether that time occurred during the pendency of a custody case. *See id.*

Appellants argue that "the plain language of [Minn. Stat. § 257.04, subd. 1(a)(7)] is not necessarily a guarantee of its lack of ambiguity," and that the "phrase 'stable, satisfactory environment' is subject to interpretation." Appellants appear to contend that, because the phrase "stable, satisfactory environment" is subject to interpretation, the district court "failed to consider that context in its findings" by neglecting to consider "the circumstances of [the child's] stay with Grandfather; [that] he was being held against Father's will, and as a result of Grandfather's inappropriate influence." We disagree.

First, to the extent appellants claim that section 257C.04, subdivision 1(a)(7), is ambiguous, that argument is not properly before us because it was made for the first time in appellants' reply brief. *See Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 887 (Minn. 2010) (stating that, generally, issues not raised or argued in an appellant's principal brief cannot be raised in a reply brief). Second, appellants' claim that the child was being

11

held against father's will misconstrues the record and is based on appellants' self-serving testimony. Because the district court is in the best position to evaluate the evidence and testimony at trial, the court was well within its discretion in rejecting appellants' interpretation of the evidence. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988) (cautioning that a reviewing court exceeds the scope of review if it "usurp[s] the role of the [district] court by reweighing the evidence and finding its own facts").

Appellants further argue that two cases, *Mize v. Kendall*, 621 N.W.2d 804 (Minn. App. 2001), *rev. denied* (Minn. Mar. 27, 2001), and *Wallin v. Wallin*, 187 N.W.2d 627 (Minn. 1971), support their position that the district court erred by considering the amount of time the child spent in grandfather's primary care after these proceedings were initiated. But both of these cases were decided before chapter 257C was codified. *See* 2002 Minn. Laws ch. 304, § 4, at 434-35. Moreover, the cases cited by appellants are not supportive of their position because neither decision was based on an erroneous consideration of the time the child spent with grandparents during the pendency of the proceedings. *See Wallin*, 187 N.W.2d at 631 (reversing an order granting custody of the minor child to the grandparents because the record reflected that the "natural mother" was "denied custody of her child merely on the ground that such transfer of custody might be disruptive" (emphasis omitted)); *see also Mize*, 621 N.W.2d at 809 (stating that "integration of the child in the home of a third party, by itself, [was] not . . . grounds for placement with that caretaker"). Therefore, appellants have not shown that the district court erred by considering the amount of time the child spent with grandfather as the primary caretaker during these proceedings.

In sum, the district court made detailed findings on the best-interests factors, determining that six of the factors are neutral, three of the factors favor grandfather, and two of the factors "strongly" favor grandfather.[2] Based on its analysis of these factors, the district court determined that it was in the child's best interests for grandfather to be granted sole legal and sole physical custody of the child. Appellants are unable to show that the district court's findings related to any of the best-interest factors are clearly erroneous, including the three that they challenged in this appeal.

## B.    *Joint-custody factors*

Grandmother also sought joint legal custody of the child with father as an alternative to sole legal and sole physical custody. In determining whether to award joint legal or joint physical custody, a district court must consider the following factors:

> (1) the ability of the parties to cooperate in the rearing of the child;
> (2) methods for resolving disputes regarding any major decision concerning the life of the child and the parties' willingness to use those methods;
> (3) whether it would be detrimental to the child if one party were to have sole authority over the child's upbringing; and
> (4) whether domestic abuse . . . has occurred between the parties.

Minn. Stat. § 257C.04, subd. 2(a).

Appellants challenge the district court's findings with respect to the first three factors, arguing that the district court abused its discretion in (1) "expressing concern about the ability of Father and Grandmother to cooperate"; (2) "finding a lack of clarity in the

---

[2] The district court found that the twelfth factor does not apply.

13

dispute resolution processes"; and (3) "using Grandfather's litigiousness as a basis to deny joint custody to Father and Grandmother."

*The ability of the parties to cooperate in the rearing of the child*

The district court expressed "significant concerns" about father and grandmother's ability to cooperate as joint legal or joint physical custodians over the course of time. The district court found that although father "now supports Grandmother's proposal, the same is a more recent development[,] and his original pleadings indicated [that] Grandmother had only seen the . . . child a few times in the preceding [nine] months and it was not in the . . . child's best interests for Grandmother to be involved." Thus, the district court determined that this factor "disfavors an award of joint custody."

Appellants argue that, by erroneously opting to apply this factor "solely" to father and grandmother, "it failed to account for Grandfather's actions, and interaction with Father, since April 2021," which "resulted in incomplete findings concerning the overall family dynamics present in this action." But grandmother and father were the parties who sought joint custody. As such, the district court's findings focusing on father and grandmother's ability to interact is consistent with the relief sought by the parties.

Moreover, the statute provides: "*If* the court awards joint legal or physical custody over the objection of a party, the court must make detailed findings on each of the factors in this subdivision . . . ." Minn. Stat. § 257C.04, subd. 2(b) (emphasis added). The district court here awarded neither joint legal nor joint physical custody. Thus, under the plain language of the statute, the district court's findings were not incomplete because detailed findings on each of the factors were not required. *See id.*

14

Appellants also contend that the district court abused its discretion by expressing concern about the ability of father and grandmother to cooperate because "the record is replete with testimony by both Grandmother and Father that they . . . have an ability to cooperate with one another." Indeed, there is evidence in the record, including testimony from both father and grandmother, that father and grandmother have the ability to cooperate. But "[w]hen the record reasonably supports the findings at issue on appeal, it is immaterial that the record might also provide a reasonable basis for inferences and findings to the contrary." *Kenney*, 963 N.W.2d at 223.

Here, there is ample evidence in the record to support the district court's concerns about the ability of father and grandmother to cooperate. For example, father initially sought a dismissal of grandmother's petition, and supported the child being adopted by grandfather. Moreover, the record reflects that, less than one year after mother died, grandmother reported father to child protection services, alleging that the child was harmed while in father's care. And the record reflects that father has had limited contact with the child since the beginning of these proceedings. Although father and grandmother now claim that they can cooperate with one another, the evidence in the record casting doubt on their testimony supports the district court's concerns about the ability of father and grandmother to cooperate. The district court, therefore, did not abuse its discretion in determining that this factor disfavors an award of joint custody.

*Methods for resolving disputes regarding any major decision concerning the life of the child and the parties' willingness to use those methods*

The district court found that "[t]his factor is not addressed in any of the pleadings or exhibits," and "[i]t is unclear what method, if any, Grandmother and Father would use to resolve potential disputes if granted joint legal custody." As such, the district court determined that this factor "disfavors an award of joint custody."

Appellants argue that the district court abused its discretion in finding a lack of clarity in dispute-resolution processes as a basis to deny joint custody because "the record is abundantly clear that Father and Grandmother share an ability to cooperate with one another," and the "actions" of father and grandmother "also demonstrate [that] they believe mediation is a fit and proper manner to address any future disputes that may arise among them." But appellants do not dispute that the record lacks evidence from appellants establishing the methods they would utilize to resolve disputes between them if they were granted joint custody. Moreover, although appellants claim that the district court should have inferred that mediation was an avenue to resolve disputes due to father and grandmother's participation in the April 2022 mediation, appellants fail to mention that the mediation was ordered by the district court, and ultimately failed to resolve the dispute. And despite appellants' claim that their testimony reflects an ability to cooperate with one another, the district court apparently did not find this testimony to be particularly credible. *See Sefkow*, 427 N.W.2d at 210 (stating that appellate courts defer to the district court's credibility determinations). Appellants cannot establish that the district court abused its discretion in analyzing this factor.

*Whether it would be detrimental to the child if one party were to have sole authority over the child's upbringing*

The district court found that all parties have the child's best interests in mind. But the district court also found that, "[g]iven the tragic and unfortunately acrimonious and litigious nature of this case, sole custody would not be detrimental." The district court determined that this factor disfavors an award of joint custody.

Appellants argue that the district court "abused its discretion in using Grandfather's litigiousness as a basis to deny joint custody to Father and Grandmother." We disagree. Despite appellants' argument to the contrary, the district court did not blame anyone, let alone grandfather, for the "litigiousness" of this case. Indeed, the district court's finding indicates, and the record supports, that the nature of this case is acrimonious and that all parties share the blame for that acrimony. Although appellants argue at length that grandfather engaged in manipulative tactics throughout these proceedings, the district court was in the best position to evaluate and weigh all the evidence, and evidence in the record supports the district court's findings on this factor. *Kenney*, 963 N.W.2d at 221-22 (under the clear-error standard, appellate courts do not reweigh the evidence, engage in fact-finding, or reconcile conflicting evidence). Accordingly, the district court did not abuse its discretion in denying appellants' request for joint legal custody.

In sum, the district court made detailed findings related to both the best-interests factors and the joint-custody factors, and those findings are supported by the record. Appellants, therefore, cannot show that the district court abused its discretion by awarding grandfather sole legal and sole physical custody of the child.

**II.**

Appellants argue that the district court "erred in failing to address Father's protected fundamental right to parent" the child. But appellants agree that the "issue of [father's] constitutional rights was . . . introduced during the post-trial briefing." Arguments raised for the first time in a posttrial brief are "not adequately raised in the district court." *Wear v. Buffalo-Red River Watershed Dist.*, 621 N.W.2d 811, 816 (Minn. App. 2001), *rev. denied* (Minn. May 15, 2001). As such, appellants' argument was not properly before the district court and is not properly before this court. *See id.*

Moreover, appellants' argument fails on the merits. While the U.S. Constitution protects a fit parent's fundamental right to determine the care, custody, and control over his children, that right is not absolute. *Troxel v. Granville*, 530 U.S. 56, 66 (2000). Both the United States Supreme Court and the Minnesota Supreme Court have recognized that a state may interfere with the fundamental right of a parent if it is necessary to protect a child's well-being. *See Prince v. Massachusetts*, 321 U.S. 158, 166 (1944); *see also SooHoo v. Johnson*, 731 N.W.2d 815, 822 (Minn. 2007).

Under Minnesota's common law, it was presumed that a biological parent was entitled to custody of his or her child, but that presumption could be overcome in certain situations, one of which was the existence of extraordinary circumstances of a grave and weighty nature that supported awarding custody of a parent's child to someone who was not that child's biological parent. *See, e.g.*, *In re Custody of N.A.K.*, 649 N.W.2d 166, 174, 176 (Minn. 2002) (discussing, and citing cases addressing, this common law presumption). After the common law presumption discussed in *N.A.K.* developed, and apparently in

direct response to the U.S. Supreme Court's *Troxel* decision, *see In re Kayachith*, 683 N.W.2d 325, 328 n.1 (Minn. App. 2004), *rev. denied* (Minn. Sept. 29, 2004), the Minnesota legislature enacted Chapter 257C, addressing the ability of "de facto custodians" and "interested third parties" to obtain custody of a child who was not their biological child, *see* 2002 Minn. Laws ch. 304, §§ 1, 13, at 429, 444 (now codified as Chapter 257C). Later, this court noted that the definitions and procedures involved in a district court's determination, under Chapter 257C, that a person is a "de facto custodian" or an "interested third party" incorporated the pre-Chapter 257C common law presumption, and that, as a result, district courts proceeding under Chapter 257C no longer needed to separately address the pre-Chapter 257C common law presumption. *See In re Custody of A.L.R.*, 830 N.W.2d 163, 167-69 (Minn. App. 2013) (discussing the evolution of the law on this point).

Here, the district court determined that grandfather was the de facto custodian of the child. *See* Minn. Stat. § 257C.01, subd. 2. Once the district court made that determination, it was precluded from giving father custody preference based on his status as a biological parent. *See* Minn. Stat. § 257C.04, subd. 1(c) (2022). Instead, the best-interests-of-the-child analysis is applied to award custody between a biological parent and a third party. *J.W.*, 627 N.W.2d at 692-93. Accordingly, the district court did not misapply the law in awarding grandfather sole legal and sole physical custody of the child.

**Affirmed.**